WILLIAM EASLEY, HOWARD HARMLESS AND BETTY ANN
HARMLESS D/B/A MAYTAG COIN LAUNDRY *v.*
MARY ALETHA WILLIAMS.

[No. 1-374A36. Filed January 20, 1975. Rehearing denied February 20, 1975. Transfer denied September 29, 1975.]

39

*Frank J. Price, Ricos, Wade and Price,* of Indianapolis, for appellants.

*John T. Hume, Jr., John T. Hume, III, Seth B. Lewis, Smith and Jones,* of counsel, of Indianapolis, *Lewis and Hardin,* of counsel, of Danville, for appellee.

ROBERTSON, P.J.—This is an appeal by defendants-appellants (Easley and Harmless) from the granting of a new trial on a motion to correct errors filed by plaintiff-appellee (Williams).

The sole issue before this court is whether the trial court erred in granting that new trial. We hold that there is no error.[1]

The facts from which this suit arose are as follows:

Williams lived on the northeast corner of Jefferson and Broadway in Danville, Indiana. Howard and Betty Harmless owned and operated a laundromat on the east side of Jefferson Street north of and adjacent to Williams' home. Harmless had constructed a concrete parking area across the entire frontage of his lot extending to the edge of the sidewalk. Between this concrete and Jefferson, a five (5) feet wide asphalt apron was installed, eliminating the usual sidewalk in that area.

On the morning of January 12, 1972, Easley drove his pick-up truck up to the front of the laundromat, parking it wholly within the concrete parking area. Williams, carrying

1. Procedural problems in this appeal were resolved in favor of the defendants-appellants in *Easley et al* v. *Williams* (1974), Ind. App., 314 N.E.2d 105.

a purse and using a walking cane, left her house and pro-
ceeded north along the sidewalk toward the Harmless' laun-
dromat. She intended to walk north to Marion Street, cross
over to the west side of Jefferson, and continue to her place
of work.

As Williams approached the pick-up truck, she observed
that the driver was in the truck. She could not recall at
trial whether the truck was running or if the lights were on.
She continued across the asphalt apron, reportedly within
the imaginary extension of the sidewalk which abutted either
side of the apron. Easley backed his truck, and Williams was
struck, suffering injury to her leg.

Williams brought suit against both Easley and Harmless.
In instructing the jury, the trial judge gave several instruc-
tions relating to the defense of contributory negligence and
an instruction on the choice of ways doctrine.

A general verdict was rendered in favor of all the defend-
ants. Williams filed her motion to correct errors. The trial
judge sustained the motion and granted a new trial. The
order specified the following reasons for granting the motion:

(1) Error in instructing the jury on the choice of ways
doctrine since it was not applicable to the facts of the case.

(2) Error in giving several instructions on contributory
negligence which were repetitious and over emphasized that
issue.

Easley and Harmless contend that a new trial should not
have been granted because no error was committed at trial in
the giving of instructions. They argue that the choice of
ways instruction was applicable to the facts of the case and
that the several instructions on contributory negligence were
not repetitious. Additionally, Harmless argues that the court
erred in determining that the alleged errors affected the ver-
dict as concerned him since no evidence supported a finding
of negligence on his part.

In reviewing the decision of a trial court to grant a new
trial, we must affirm if any of the reasons stated by the trial

judge for taking that action are proper. *Landers* v. *McComb Window and Door Co.* (1969), 145 Ind. App. 38, 248 N.E.2d 358; *Bailey* v. *Kain* (1963), 135 Ind. App. 657, 192 N.E.2d 486.

As the first reason for granting a new trial, the trial judge stated that error was committed by giving a choice of ways instruction to the jury because that doctrine was not applicable to the facts of the case.

We agree that the instruction was improperly given.

Before an instruction is proper there must be sufficient evidence in the record to support that instruction. *Moore* v. *Funk* (1973), 155 Ind. App. 545, 293 N.E. 2d 534.

The choice of ways doctrine is applicable only where there are alternative paths to choose and the path chosen involves a danger so great and apparent that a person of ordinary prudence would not have used that way under the circumstances. *City of Mitchell* v. *Stevenson* (1964), 136 Ind. App. 340, 201 N.E.2d 58; *Wyler* v. *Lilly Varnish Co.* (1969), 146 Ind. App. 91, 252 N.E.2d 824.

The present case presents no such situation. In the first place, it is doubtful that Williams was even aware that a choice of ways actually existed. She was on her accustomed way to work walking along a public sidewalk or extension of the sidewalk. Also, she was an elderly lady walking with assistance of a cane. The availability of a route which would require her to walk many feet out of her way, around the front of a truck, stepping up and down a step in the process is very questionable.

Moreover, the existence of alternate routes in itself does not make the choice of ways doctrine applicable. The path chosen must involve a danger so great and apparent that an ordinary person would not have chosen that way. From the facts of this case, it is clear that the trial judge was correct in ruling that the choice of ways doctrine was not applicable.

Secondly, the trial judge ruled that error had been committed by giving several instructions on contributory negligence which were repetitious and tended to over emphasize that particular issue.

As stated in *Perry* v. *Goss* (1970), 253 Ind. 603, 255 N.E. 2d 923:

> "Repetition to some extent in instructions is bound to occur, but that does not make them per se erroneous. It is where repetition occurs so often and so emphatically that it overly impresses the jury with some particular phase of the law or fact that it can be said that such instructions are to be condemned." 255 N.E.2d at 926.

In all, six instructions were tendered by the defendants and given by the court concerning contributory negligence. Our reading of those instructions reveals that they were in fact repetitious each repeating, although in somewhat different language, the elements of contributory negligence. When those instructions are read in light of the instructions as a whole we agree that the issue of contributory negligence was unduly emphasized such that the giving of those instructions was error.

Finally, Harmless asserts that the new trial should not have been granted against them since no evidence supported a finding of negligence on their part. However, from the record in this case we are unable to say as a matter of law that no evidence was presented which tended to show negligence on the part of Harmless. The trial judge was correct in granting a new trial with respect to both appellants.

Judgment affirmed.

Lybrook, J., concur; Staton, J., dissents with opinion.

### DISSENTING OPINION

STATON, P.J.—I dissent. The jury was properly instructed and weighed the evidence before rendering its verdict. The trial court's reason for granting a new trial clearly reflects a reweighing of the "choice of ways" evidence. A "more devious route" conclusion is not supported by the evidence.

Some repetition is necessary and unavoidable when drafting instructions. When all the instructions are read together, they do not ". . . tend to overemphasize the duty owed by plaintiff." I would reverse the trial court's judgment granting a new trial and instruct the trial court to reinstate its judgment upon the jury's verdict.

## I.

### "Devious"—Reweighing of the Evidence

The trial court's reason for granting a new trial reflects a reweighing of the "choice of ways" evidence:

> ". . . [T]he Court erred in the trial of this cause . . . for the reason that the choice of ways doctrine was not applicable in that all the evidence indicated that the plaintiff was on a sidewalk or walkway which was an extension of two designated sidewalks and that she was not required to choose between that way which was a public right-of-way and a more devious route which would have been on the defendant Harmless' property, and that said instruction incorrectly advised the jury upon the law of the case. . . ."

A review of the evidence clearly indicates that Instruction Four properly advised the jury upon the law. Harmless was entitled to have Instruction Four read to the jury. *Bundy* v. *Ambulance Indianapolis Dispatch, Inc.* (1973), 158 Ind. App. 99, 301 N.E.2d 791; *Barnes* v. *DeVille* (1973), 155 Ind. App. 387, 293 N.E.2d 54; *Moore* v. *Funk* (1973), 155 Ind. App. 545, 293 N.E.2d 534. In reaching its "devious" conclusion, the trial court reweighed uncontradicted evidence and omitted other evidence relevant to Instruction Four. *Holcomb* v. *Miller* (1971), 149 Ind. App. 46, 269 N.E.2d 885.

Mrs. Williams, a sixty-four year old welfare employee, used a cane when walking to and from her place of employment at the courthouse. The day of the accident, January 12, 1972, shortly after seven o'clock in the morning, it was "not too dark" when Mrs. Williams looked out of her kitchen window and saw a pickup truck pull into the laundromat. Her home was located on the northeast corner of Jefferson and Broadway in Danville, Indiana. She was going to the post office which

was across the street from her home and across the street from the laundromat. Three ways were available to her: (1) she could have crossed the street at the corner completely avoiding the laundromat; (2) she could have used the sidewalk immediately in front of the laundromat which would have placed her in front in front of the truck instead of behind it; or (3) she could have taken the route on the opposite side of the street from the post office which was behind the truck where she was struck. These three ways were available to her and are clearly exhibited by the evidence submitted to the jury. The evidence does not indicate that any of these routes were "devious" as indicated by the trial court. Mrs. Williams testified that she did not always take the same route to the post office:

> "Q. Now, you indicated, Mrs. Williams, part of your duties at work, ah, you'd have to go to the post office and get the mail?
>
> "A. That's correct.
>
> "Q. Was this a daily thing?
>
> "A. Oh, yes.
>
> "Q. This was part of your job?
>
> "A. Yes.
>
> "Q. And I think you testified that you always walked straight north on the sidewalk on the east side
>
> "A. (interposing) No.
>
> "Q. Beg pardon?
>
> "A. Not always.
>
> "Q. Well, you would take a different route to the post office?
>
> "A. Well, not very different.
>
> "Q. Well, what
>
> "A. (Interposing) Sometimes I crossed over and sometimes I didn't.
>
> "Q. You mean crossed over what?
>
> "A. I crossed over to the other side of the street.
>
> "Q. Well, where would you cross?
>
> "A. From my house. Not the front, I mean side of my house.
>
> "Q. You mean you just walked straight across the street of—
>
> "A. Sometimes.

"Q. Well, how would you do it other times?

"A. Well, I walked up to the corner like I explained this morning, or I might, ah, if it was snowy and the sidewalks weren't cleared off and the hill had been sanded and there was a place to walk, I might even walk out there.

"Q. You sometimes would walk right across Jefferson there?

"A. Yes, sometimes I did. I didn't have any set pattern.

"Q. You did not?

"A. Why no."

The evidence does not support the trial court's "devious" conclusion and reason for declaring a new trial. *Holcomb* v. *Miller, supra.*

## II.

### *"To Overemphasize"*

The trial court granted a new trial for the additional reason that it:

". . . gave repeated instructions referring or applying the doctrine of contributory negligence and that said doctrine was so stressed that it tended to overemphasize the duty owed by plaintiff. . . ."

I find this reason, in light of the issues, evidence and instructions given, to be an incredible conclusion. A careful review of the instructions indicates to me that the issues were adequately covered. Only four instructions were given which related to the duty owed by the plaintiff. Five instructions were given by the trial court on the duty owed by the defendants. In addition to these instructions which had been submitted by the parties, the trial court gave two of its own duty instructions. These instructions appear to be well balanced in emphasis. If error can be predicated upon a slight reference to another theory or an expressed reference to an additional duty under the same theory, litigation would become interminable and the jury system inoperable. Easley was entitled to instructions upon his theory of the case. *Moore* v. *Funk, supra.*

Each of the instructions submitted by Easley express a different duty and the fifth explains or defines contributory negligence. The "duty owed by plaintiff" instructions were as follows:

(a)   Easley's Instruction Two is a general duty to exercise ordinary care instruction. It reads as follows:

"You are instructed that it was plaintiff, Mary Aletha Williams' duty to exercise ordinary care to protect herself from injury. She is chargeable in law with knowledge of such danger as she might know and appreciate by the exercise of ordinary care. The exercise of ordinary care includes the use of one's faculties or power of observation in order to learn and comprehend the dangers which are naturally instant to the situation and which may be discovered in the exercise of such care by the use of one's faculties."

(b)   Easley's Instruction Five instructs the jury that you have a duty to exercise reasonable care to avoid injury to yourself even though you may have the right-of-way. It reads as follows:

"The mere fact, if you find it to be a fact, from a fair preponderance of the evidence in this case, that the plaintiff pedestrian had the right-of-way over the vehicle when the accident occurred does not relieve the plaintiff pedestrian having such right-of-way from the duty to exercise reasonable care to avoid injuries to her person."

(c)   Easley's Instruction Thirteen defines contributory negligence as a defense. It reads as follows:

"Contributory negligence, which is a defense, is negligence on the part of the injured person which causes or partly causes her damages; in other words, if the plaintiff did something or omitted to do something that a reasonably careful and prudent person would have done, or would not have omitted to do under the circumstances of this particular case, and that act or omission proximately contributed to the damages which she claims, this is contributory negligence and under the law bars her recovery."

(d)   Easley's Instruction Fourteen is a duty to keep a reasonable lookout instruction. It reads as follows:

"A pedestrian has the duty to keep a reasonable lookout under the circumstances, or such a lookout

as an ordinarily prudent person would have maintained under the same or similar circumstances."

(e) Easley's Instruction Seventeen advises the jury that contributory negligence is at issue and fixes the burden of proof. It reads as follows:

"The question of contributory negligence on the part of the plaintiff is an issue in this case. If plaintiff was guilty of negligence that proximately contributed to her injury, then plaintiff cannot recover even though the defendant may have been negligent.

"The defendant has the burden of proving by a preponderance of the evidence that plaintiff was guilty of such negligence."

Instruction Seventeen is different from the instruction defining contributory negligence in that it instructs the jury that even if the defendant is negligent, the plaintiff may be barred from recovery if the jury finds the plaintiff contributorily negligent, and this instruction further explains the burden of proof of Easley's theory of contributory negligence.

I do not think that the trial court overemphasized the duty owed by the plaintiff when these five instructions were given to the jury on the duty owed by the defendants:

## "INSTRUCTION NO. 1

"The operator of a motor vehicle is bound to see what he could have seen if he had exercised due care under the surrounding circumstance.

"If you find from a preponderance of the evidence that William Easley, in the exercise of Reasonable care should have see [sic] Mary Aletha Williams before moving his vehicle from the parking lot of the laundrymat [sic] and if you further find from a preponderance of the evidence that William Easley backed into Mary Aletha Williams without seeing her, then you are warranted in finding that William Easley was negligent."

## "INSTRUCTION NO. 2

"YOU are instructed at the time and place of the occurrence in question there was in full force and effect a statute in the State of Indiana which provided:

'No person shall start a vehicle which is stopped, stanking [sic], or parked unless and until such movement can be made with reasonable safety.'

"If you find a preponderance of the evidence that William Easley violated the provisions of this statute and that the violation was without excuse or justification, such conduct would constitute negligence on the part of William Easley."

"INSTRUCTION No. 3

"You are instructed at the time and place of the occurrence in question there was in full force and effect a statute in the State of Indiana which provided in part:

'. . . Every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon a roadway and shall give warning by sounding a horn when necessary and shall exercise proper precaution upon observing any . . . incapacitated person upon a highway.'

"In this statute the roadway is defined as 'that portion of a highway improved, designed and ordinarily used for vehicular traffic.' The highway is defined as 'the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicle traffic.

"If you find from a preponderance of the evidence that William Easley violated the provisions of this statute and that the violation was without excuse or justification, such conduct would constitute negligence on the part of William Easley."

"INSTRUCTION NO. 5

"A person who is exercising ordinary care has a right to presume that others will perform their duty under the law. Therefore, if you find from a preponderance of the evidence that Mary Aletha Williams, at the time and place in question was exercising ordinary care for her own safety she had a right to assume that William Easley would perform his duties under the law and she further had a right to rely and act upon that assumption until she received notice to the contrary."

"INSTRUCTION NO. 9

"An abutting landowner or occupier who creates an unsafe condition on a sidewalk area is under a duty to exercise reasonable care to safeguard pedestrains [sic] from injury from this  unsafe condition.

"If you find from a preponderance of the evidence that Howard Harmless created an unsafe condition along the sidewalk area extending across his driveway then I instruct you that Howard Harmless was under a duty to exercise reasonable care to avoid injury to pedestrians from this unsafe condition. If you further find from a preponderance

of the evidence that at the time and place in question Howard Harmless failed to exercise such reasonable care then you are warranted in finding that Haward [sic] Harmless was negligent."

The two duty instructions given by the trial court add little in the way of emphasis. These two instructions read as follows:

"Negligence, either on the part of the plaintiff or the defendants, is the failure to do what a reasonable careful and prudent person would have done under the same or like circumstances, or the doing of some thing which a reasonable careful and prudent person would not have done under the same or like circumstances; in other woulds [sic], negligence is the failure to exercise reasonable or ordinary care."

"Reasonable care or ordinarily care, on the part of both the plaintiff and the defendants, in [sic] such care as a reasonabely [sic] careful and ordinarily prudent person would exercise under the same or similar circumstances."

## III.

### Conclusion

Each of Easley's instructions is addressed to a different set of circumstances and a different aspect of Easley's defense theory. For example: Instruction Two deals with the exercise of ordinary care; Instruction Five deals with the duty to exercise reasonable care even though you have the right-of-way; Instruction Thirteen defines for the jury the theory of contributory negligence; Instruction Fourteen explains the duty to keep a reasonable lookout; and Instruction Seventeen explains to the jury who has the burden of proving contributory negligence. Different circumstances and aspects of a defense theory require separate instructions. *Gulley* v. *Hamm* (1947), 117 Ind. App. 593, 73 N.E.2d 188.

Any argument that these duties and the explanation of contributory negligence could be condensed into a single paragraph or single instruction can be easily dismissed. Such an instruction would be difficult to draft, and its length would create confusion. *Rader* v. *Collins* (1959), 130 Ind. App. 227, 161 N.E.2d 381.

Our Supreme Court has recognized that some repetition is bound to occur when giving instructions to a jury. In *Perry* v. *Goss* (1970), 253 Ind. 603, 608, 255 N.E.2d 923, 926, Judge Arterburn, writing for the Court, stated:

". . . Repetition to some extent in instructions is bound to occur, but that does not make them per se erroenous. It is where repetition occurs so often and so emphatically that it overly impresses the jury with some particular phase of the law or facts that it can be said that such instructions are to be condemned. We do not find that such a condition exists here nor that the instructions in this case are prejudicial. [citations omitted]."

Judge Arterburn warned against the overemphasis placed upon the refined meanings of instructions and their affect upon the jury. Quoting *Hendrix* v. *Harbelis* (1967), 248 Ind. 619, 624, 230 N.E.2d 315, Judge Arterburn stated:

" 'Instructing a jury is a most difficult and complex process. It is generally conceded that there has been an overemphasis placed upon the wording and refined meaning of instructions which far exceed their actual effect upon the jury. When an instruction has to be read and reread by a legally trained mind to catch a slight variation or error in its meaning, it is difficult to believe that a jury of laymen could have been misled. Words are mere signs of symbols of meaning and thought, which are never exact. We strive with inexact tools to work out refinements and precise lines in statements of thoughts and ideas, but are never able to reach exact perfection. In the writing of instructions, we are eternally confronted with attempts and failures at exactitude, and we must keep this human frailty in mind when we examine the language of instructions. . . .' " *Perry* v. *Goss, supra,* 253 Ind. at 603, 255 N.E.2d at 927.

The trial court's specific reason for granting a new trial as to Harmless— ". . . the choice of ways doctrine was not applicable. . . ." —is not supported by the evidence. Three choices of ways were available to Mrs. Williams. She testified that she did not always take the same route. I find no evidence which would permit the trial court to characterize any of the routes as devious, nor do I find an absence of evidence as to the three choices of ways. The evidence has been re-

weighed by the trial court. This is error. *Holcomb* v. *Miller, supra.*

The second specific reason for granting a new trial was directed at repeated instructions which ". . . tended to over-emphasize the duty owed by plaintiff. . . ." Easley's four duty instructions were well balanced in emphasis against Mrs. Williams' five duty instructions. It is difficult to conceive a more balanced instructional posture. *Perry* v. *Goss, supra.* The trial court was correct in giving the instructions to the jury. Its reason for granting a new trial can not be supported by the record; therefore, its reason is erroneous. *Landers* v. *McComb Window and Door Co.* (1969), 145 Ind. App. 38, 248 N.E.2d 358.

The trial court's judgment granting a new trial should be reversed with instructions to overrule Mrs. Williams' motion for a new trial and to reinstate the judgment rendered upon the jury's verdict.

## On the Appellee's Motion to Dismiss
### [Filed July 25, 1974]

Per Curiam.—This cause is pending before the Court on the appellee's Motion to Dismiss the Appeal of Appellants Howard M. Harmless and Betty Ann Harmless, d/b/a Maytag Coin Laundry. Appellee's Motion alleges that said appellants have neither filed a motion to correct errors nor an assignment of errors.

This was a cause of action for damages for personal injuries sustained by plaintiff-appellee, when she was allegedly struck by a truck operated by the defendant-appellant Easley as he was backing out of a driveway to a laundromat owned by the defendants-appellants Harmless. After trial to a jury, a verdict was returned for the defendants and judgment was entered accordingly.

Thereafter the plaintiff-appellee filed her motion to correct errors alleging eight specifications of error and praying that

the judgment be set aside and a new trial be granted. The trial court granted the motion to correct errors and its order thereon is as follows:

"The court, being advised, finds that the court erred in the trial of this cause as set out in plaintiff's Motion to Correct Errors under plaintiff's specification number 2 by giving defendant Harmless' tendered instructions number 4, for the reason that the choice of ways doctrine was not applicable in that all the evidence indicated that the plaintiff was on a sidewalk or walkway which was an extension of two designated sidewalks and that she was not required to choose between that way which was a public right-of-way and a more devious route which would have been on the defendant Harmless' property, and that said instruction incorrectly advised the jury upon the law of the case. The court further erred as set out in specification number 6 of plaintiff's motion to correct errors in that the court gave repeated instructions referring to or applying the doctrine of contributory negligence and that said doctrine was so stressed that it tended to overemphasize the duty owed by plaintiff. The court further finds that these errors cannot be corrected except by the granting to plaintiff a new trial.

"Plaintiff's Motion to Correct Errors is, therefore, now sustained and plaintiff is granted a new trial as against the defendants William Easley and Howard Harmless and Betty Ann Harmless, d/b/a Maytag Coin Laundry."

The defendant-appellant Easley filed a Motion to Correct Errors directed to this ruling. The defendants-appellants Harmless did not. The appellee's Motion alleges that appellants Harmless should have filed such a motion, pursuant to Rule AP. 7.2(A)(1) as interpreted by the cases of *State* v. *DePrez* (1973), 260 Ind. 413, 296 N.E.2d 120, and *Inkoff* v. *Inkoff* (1974), 159 Ind. App. 239, 306 N.E.2d 132.

In the case of *State* v. *DePrez* (1973), 260 Ind. 413, 296 N.E. 2d 120, the Supreme Court considered the problem raised when the trial court, in ruling on a motion to correct errors, does something other than merely granting or denying the motion. In *DePrez* the trial court first entered a simple judgment of dismissal. Thereafter, in ruling on he motion to correct errors, the trial court entered special findings of fact, conclusions of law and judgment, affirming the dismissal. On appeal

to the Supreme Court of Indiana, the appellee filed a motion to dismiss alleging, in part, that no motion to correct errors was ever filed addressed to the final judgment of the trial court. Our Supreme Court sustained the appellee's motion, holding that the ruling on the motion to correct errors was a new judgment, to which a subsequent motion to correct errors should have been addressed, because the court made new findings of fact and conclusions of law, even though the judgment of dismissal was the same. Chief Justice Arterburn, speaking for the Court, stated:

> "If the trial court had simply either granted or denied that Motion to Correct Errors such step would have constituted the final judgment from which this appeal could have been taken without further ado. Rule AP. 4.
>
> "However, because of the insufficiency of the November 4, 1970 entry in light of the attack made upon it by the State's Motion to correct Errors, the trial court entered a completely new entry of February 3, 1971, pursuant to Rule TR. 52 (B), constituting new findings of fact and a new judgment as authorized further by Rule TR. (59) (E). This new entry for the first time set forth the reasons in fact and in law upon which the trial court's dismissal was based. If they were in error, then a Motion to Correct Errors was clearly necessary. Thus, the February 3, 1971 entry became the final judgment, to which a Motion to Correct Errors, referred to in Rule AP. 4, should have been filed."

This Court had occasion to consider the same problem in the case of *Davis* v. *Davis* (1974), 159 Ind. App. 290, 306 N.E. 2d 377. In *Davis,* following a decree of divorce and distribution of the marital estate, the wife filed a motion to correct errors, alleging the court had erred in the division of the property. The trial court granted her motion, and entered an amended judgment which increased the amount of the property awarded to her. The husband sought to appeal this ruling without filing a subsequent motion to correct errors on his own behalf.

On appeal to this Court, the appellee wife filed her motion to dismiss alleging that the trial court's ruling on the motion to correct errors constituted a new judgment, to which a

second motion to correct errors should have been filed. This Court, following the decision of the Supreme Court in *State* v. *DePrez, supra,* sustained the appellee's motion to dismiss, stating:

> "Thus, the Supreme Court has interpreted Rule AP. 4(A) to mean that if the trial court grants or denies a motion to correct errors which is accomplished by a new entry or judgment consisting of additional findings, amendments, or other alterations of the prior judgment, the party aggrieved thereby must file a motion to correct errors addressed to the new entry which has become the final judgment from which appeal is taken. With this interpretation we agree, not only because we are bound to do so, but because it logically stresses the need for specificity of alleged errors in the appeal process. The first sentence of Rule AP. 4(A) referring to appeals 'from all final judgments,' as well as the second sentence denominating a ruling on a motion to correct errors as a final judgment is thus given force and effect."

In *State* v. *Kushner et al.* (1974), 160 Ind. App. 464, 312 N.E.2d 523, the trial court sustained the appellee's Motion to Correct Errors and granted a new trial subject to additure. In ruling on the Motion to Correct Errors, the trial court made new findings and entered a new judgment. We there held that because the Court's ruling constituted new findings and a new judgment, the appellant should have filed a Motion to Correct Errors directed to this new judgment as a condition precedent to any appeal therefrom.

In *Wyss et al.* v. *Wyss et al.* (1974), 160 Ind. App. 281, 311 N.E.2d 621, the effect of the trial court's ruling on the Motion to Correct Errors was the same as the original judgment. However, in ruling on the Motion to Correct Errors the trial court made new and additional findings not contained in the original judgment. We there held that a subsequent Motion to Correct Errors was required to have been filed in order to preserve any error on appeal.

All of these previously discussed cases differ from the case now before us in that in each of those earlier cases, a new judgment resulted from the trial court's ruling on the original

Motion to Correct Errors. However in this case, the court's ruling on the Motion to Correct Errors, abolished the original judgment by granting a new trial, and no new judgment resulted. Therefore, no subsequent Motion to Correct Errors was required.

This is exactly the type of case Chief Justice Arterburn spoke of in *State* v. *DePrez, supra,* when he stated:

> "If the trial court had simply . . . granted . . . the Motion to Correct Errors such step would have constituted the final judgment from which this appeal could have been taken without further ado."

The final judgment in this case is deemed to be the granting of the new trial, from which an appeal may be taken pursuant to Rule AP. 4 (A).

The appellee's Motion to Dismiss is denied.