STATE OF INDIANA, RUEL W. STEELE, H. O. MCCUTCHEN, JAMES DUMAS, HARRY BROWN, AS MEMBERS OF THE INDIANA STATE HIGHWAY COMMISSION v. MARGARET C. DWENGER.

[No. 2-1073A231. Filed February 16, 1976. Rehearing denied March 18, 1976. Transfer denied August 25, 1976.]

*Theodore L. Sendak,* Attorney General, *A. Frank Gleaves, III,* Deputy Attorney General, for appellant.

*Donald W. Ward, John F. Ittenbach, Feeney & Ward,* of Indianapolis, for appellee.

WHITE, J.—The plaintiff-appellee Margaret C. Dwenger (Dwenger), a pedestrian, crossed over a depressed limited access, state highway (Madison Avenue, Indianapolis, U.S. Highway 31) on a pedestrian bridge built and maintained by appellant Indiana State Highway Commission (State) at what

was formerly the Palmer Street intersection. She recovered judgment of $20,000.00 against the State in a jury verdict for injuries she suffered when she stepped into a hole at the west end of the bridge. The Palmer Street concrete sidewalk onto which she should have stepped was narrower than the bridge, leaving a space from which rainwater draining off the bridge had washed out the earth at the edge of the sidewalk creating the hole.

The errors assigned in the State's Motion to Correct Errors and argued in its brief fall into three categories and will be so discussed herein, namely:

1. Failure to prove that the State was liable.
2. Contributory negligence on the part of Dwenger.
3. Errors in the conduct of the trial.

## I.

## FAILURE TO PROVE LIABILITY

State's argument on this issue is that the evidence is insufficient to show negligence in the design and construction of the bridge, and that the evidence is insufficient to show that the State, as opposed to the City of Indianapolis, had the duty to maintain the specific area involved.

The undisputed evidence shows that the footbridge involved is the first such structure ever built by the Highway Commission, and that the engineers involved had not had any prior experience with footbridges. It further shows that the planning of the entire project was sort of a patchwork affair. The bridge was not considered when the plans for Madison Avenue were prepared nor before construction began on that road, but was instead added to the road construction contract.

Apparently the Highway Commission did not start from scratch and design a pedestrian bridge but instead tried to adapt the design for a vehicular bridge with as little change as possible. No explanation was given for having the bridge walkway 3 feet wider than the approach sidewalk. The

reason given for the lack of drainage was a belief that the water runoff would not be significant. The evidence further shows that the erosion occurred over the course of years and that the highway department inspected the bridge regularly over the same course of years, one such inspection being made six months prior to Dwenger's accident. (The highway department claims such inspections were solely to determine the structural integrity of the bridge, not to discover any defect in its surface. The condition of the surface, the department maintains, was the responsibility of the City of Indianapolis.)

There was evidence sufficient to have sustained a jury finding that the Highway Commission begrudgingly yielded to neighborhood pressure in deciding to construct the bridge and that it did so in the quickest and simplest manner possible, and with so little interest in the final product that it subsequently made no attempt to determine whether it was constructed to serve its purpose of providing a safe pedestrian crossing. In short the jury could have found from the evidence that the Highway Commission had negligently designed and constructed the footbridge.

On the relationship between negligence and injury in *Gregory* v. *White Truck and Equipment Co., Inc.* (1975), 163 Ind. App. 240, 323 N.E.2d 280, 284, we said:

> "For a plaintiff's damages to be proximately caused by the negligent act of a defendant, the injuries need only be a natural and probable result thereof; the injurious consequences visited upon a plaintiff must be those which, in light of the circumstances, should reasonably have been foreseen or anticipated."

The erosive power of flowing water is common knowledge. The jury could reasonably have found that the commission's engineers could and should have foreseen that directing the flow of water over the narrow and steeply slanted strip of ground surrounded on three sides by concrete would eventually wash away a large portion of

that ground, creating the hole at the end of the bridge. Consequent injury to pedestrians using the bridge was equally foreseeable. Thus the evidence was sufficient to sustain the jury's verdict that Dwenger's injury was the proximate result of the State's negligence.

The State's argument that maintenance of the walkway area was not its responsibility but that of the City of Indianapolis is, in effect, an argument that Dwenger's injury was the proximate result of the City's intervening negligent maintenance and not of the State's original negligent design and construction. Without deciding whose was the duty to maintain the area in question, we reject that argument.

*Citizens Telephone Co.* v. *Prickett* (1919), 189 Ind. 141, 125 N.E. 193, involved a situation wherein two independent contractors had damaged a telephone pole below the surface of the ground, and thus weakened the pole. They advised the telephone company of the weakening of the pole. The telephone company later sent one of its employee-linemen to remove some wires from the pole, but did not tell him of the pole's weakened condition. In holding the contractors liable for the injuries sustained by that lineman when the pole fell, the court said (189 Ind. at 155-6):

". . . In *Union Pacific R. Co.* v. *Callaghan* (1893), 56 Fed. 988, 6 C.C.A. 205, the court in speaking of an independent intervening agency said: 'The independent intervening cause that will prevent a recovery on account of the act or omission of a wrongdoer must be a cause which interrupts the natural sequence of events, turns aside their course, prevents the natural and probable result of the original act or omission, and produces a different result that could not have been reasonably anticipated. The concurrent or succeeding negligence of a fellow servant or a third person which does not break the sequence of events is not such a cause, and constitutes no defense for the original wrongdoer, although, in the absence of the concurrent or succeeding negligence, the accident would not have happened.' The negligence of the telephone company in failing to warn appellee, after it had notice of the dangerous condition of the pole, was not an intervening

cause that interrupted or turned aside the natural sequence of events, or prevented the natural and probable effect of the negligent cutting of the pole. It simply failed to interpose the care of the company to prevent the probable result. . . .

"An independent intervening agency which will protect the original wrongdoer must be the efficient cause of the injury of which complaint is made, and not a negligent act or omission of such agency concurring with or succeeding the original negligence permitted by the original wrongdoer to continue and which in the natural course of events results in such injury."

In the instant case the failure of the City to maintain the footbridge, assuming the City had such a duty, "was not an intervening cause that interrupted or turned aside the natural sequence of events" resulting from the negligent design and construction of that footbridge.

## II.

## CONTRIBUTORY NEGLIGENCE

State argues that the evidence conclusively proves that Dwenger was contributorily negligent as a matter of law in that the hole itself was clearly visible and Dwenger had prior knowledge of its existence, or alternatively, that she incurred the risk by using the footbridge knowing that the hole was there when she could have used another route which was safer.

In *Town of Argos* v. *Harley* (1943), 114 Ind. App. 290, 49 N.E.2d 552, the appellee was injured when he tripped over a pipe embedded in a sidewalk and extending two or three inches above the sidewalk surface. The pipe had been there for two years, was in plain view, and the appellee had prior knowledge that it was there. The court specifically held that "previous knowledge of a defect, in itself, does not charge one, if injured thereby, with contributory negligence as a matter of law. Evidence of such previous knowledge is competent and, in determining the

question, should be considered by the jury along with other evidence on the subject." (114 Ind. App. at 306.) As to the plain view argument, the court, omitting citations, said (114 Ind. App. at 306):

". . . We are of the opinion that whether said appellee, in the exercise of ordinary care for his own safety, should have been looking at the sidewalk immediately prior to and at the time of the accident was a question for the jury to determine from all the facts and circumstances disclosed by the evidence. A pedestrian is not bound to keep his eyes constantly on the sidewalk. . . . Nor is he required to make an active search for defects. . . . He is not negligent, as a matter of law, in failing to see a defect in plain view . . . , and especially is this true when his attention is diverted by some sufficient cause. . . ."

As to argument that Dwenger incurred the risk by choosing to use the footbridge rather than following a different route, the court in *Easley* v. *Williams* (1975), 163 Ind. App. 38, 321 N.E.2d 752, 754, said:

"The choice of ways doctrine is applicable only where there are alternative paths to choose and the path chosen involves a danger so great and apparent that a person of ordinary prudence would not have used that way under the circumstances . . . (citing cases)."

Dwenger did not own or have access to a car and the only alternative pedestrian route between her residence and the grocery store involved crossing Madison Avenue itself at its intersection with Terrace Street. As to that route she testified:

"A. Yes, but crossing Madison you've got a problem because that light stays on an awful short while and a girl—a lady friend of mine, she got killed there a few years ago crossing that. It really don't give you much time to get across there.

"Q. Isn't there a push button like there?

"A. Yes, there is.

"Q. So you can hold the light?

"A. But after she got killed, why, there was people down there inspecting that and timing that, and pushed that

button and you could just about get to the center, unless you hurried or run across."

The jury could have found that Dwenger chose what she reasonably believed to be the safer route.

## III.

## ERRORS IN TRIAL

The State has presented a number of alleged errors occurring during the course of the trial:

a. Permitting Dwenger's expert witness to testify. A pretrial order directed the parties to exchange the names of witnesses on or before Friday, May 18, the Friday before trial. On May 16, Dwenger mailed to the State a list of eleven prospective witnesses. On Thursday, May 17, the State filed with the court a list of thirteen prospective witnesses (the time or method of service on Dwenger is not apparent.) On Friday, May 18, the State prepared a list of three additional witnesses in the form of a letter. Counsel for the State claimed that this list was hand-delivered to Dwenger on Friday; counsel for Dwenger claimed they received it by mail on Saturday. Also, on Friday, May 18, Dwenger mailed to the State the name of an additional witness, a professional engineer to be called as an expert witness. The deputy attorneys general representing the State did not become aware of that letter until they returned to their office Monday evening after the first day of trial, nor were they otherwise notified thereof. On Tuesday morning the State moved the trial court to disqualify the witness from testifying or, in the alternative, to grant a continuance. Dwenger's attorneys, in response, stated that they had first contacted the witness on Thursday evening, that the witness had not agreed to testify until Friday afternoon, and that upon receiving that agreement they immediately mailed a notice to the State. The trial judge stated that in his opinion both parties had been dilatory (there had been

several pretrial conferences). He overruled the motion to disqualify and granted an immediate thirty minute recess to permit the State to interview the witness. The State protested the brevity of the recess and now argues that it was forced to proceed with the trial lacking proper preparation, since it was given insufficient time to depose the expert prior to his in-court testimony.

The State's argument is based on the provisions of TR. 26 (B) concerning depositions of expert witnesses. The State notes that none of the three witnesses on its supplemental list is an expert witness. However, the list of thirteen witnesses, presumably mailed Thursday and received by Dwenger's counsel Friday, does not distinguish between expert and lay witnesses. It names ten employees of the Indiana Highway Commission and gives the addresses of nine of them as the district office of their employment (six at Indianapolis, two at Greenfield, and one at Seymour). Only four of that ten, including the one for whom no address other than "Indiana State Highway Commission" was given, were actually called as witnesses. Two of that four testified as experts. Thus it appears that Dwenger's counsel on receiving that list were presented with the formidable, if not impossible, task of contacting all ten possible witnesses before the close of the highway district offices on Friday; of determining which of those witnesses, if any, had the training and experience to qualify as expert witnesses; of arranging for the deposition of, and deposing, those witnesses over the weekend; and of being ready for trial on Monday morning. We further note that approximately three years elapsed between the filing of the complaint and the trial.

Under the circumstances we are inclined to agree with the trial court. Both parties were inexcusably dilatory as to witness lists. Each has thereby waived the right to complain of the other's delay.

b. The State filed a Motion in Limine requesting, *inter alia*, that Dwenger be prohibited from interjecting into the

trial in any manner, (1) the fact that shortly before the trial the State had repaired and filled in the hole in question, and (2), any mention of punitive damages. The trial court granted the motion as to punitive damages. As to repairs it sustained "said motion as it applies to prior negligence or as an admission of negligence on the particular occasion in question, but overrules said motion as it applies to said evidence to show ownership or control of the location in question at the time of the injury."

The State does not challenge that order as it applies to evidence of repair. But it does allege error in the introduction of such evidence, contending its purpose was to show negligence rather than ownership or control. We need not consider the logic of that contention, since each time the State objected to a question on that ground, the court instructed the jury that such evidence was to be considered only for the purpose of determining ownership or control. A similar admonition was embodied in the final instructions to the jury.

The State also argues that Dwenger violated the order in relation to punitive damages in that one of her attorneys, during final argument, mentioned "the far-reaching impact that your verdict is going to have, not just here in Marion County, but all over the State of Indiana." To this remark the State objected, contending it violated the order against reference to punitive damages. We fail to see any error in the overruling to that objection. The State has failed to convince us that there was any reason for the trial court to have recognized that remark as "an appeal for a verdict that would teach a lesson to the State." Nor has the State suggested that the remark affected the amount of the verdict.

c. The State alleges error in the giving of certain final instructions to the jury and the refusal to give to the jury certain instructions tendered by the State.

There was no error in the court's refusal to give the State's tendered instructions 7, 9 and 11 since the propositions therein stated are adequately covered by other instructions which were given. *Bonek* v. *Plain* (1972), 153 Ind. App. 516, 519, 288 N.E.2d 185; *Ashton* v. *Anderson* (1972), 258 Ind. 51, 65, 279 N.E.2d 210. Nos. 7 and 9 concern the doctrine of incurred risk which is covered by the court's instruction No. 13. No. 11 first quoted Ind. Ann. Stat. § 18-5-10-6 (Burns Code Ed., 1974) which purports to give cities and towns exclusive control and care of their streets, alleys and other public places. No. 11 then told the jury it should find for the State if it found from the application of that statute that the State had no duty to maintain the area where Dwenger was injured. The division between City and State of the duty to maintain areas of highways under the State's control is more thoroughly covered by what is now Ind. Ann. Stat. § 8-13-4-2 (Burns Code Ed., 1973), the pertinent portions of which were quoted in the State's tendered instruction No. 10, which the court gave after modification.

After quoting Dwenger's instruction No. 3, and noting that it had objected to it being given, the State's entire argument relative thereto is: "The instruction was improperly given because it was adequately covered by Court's Instruction No. 8 and 12, and further because it was a negative instruction." No authority is cited to support either proposition. Nor does the State argue that whatever repetition may be involved amounted to an argument by the court constituting an abuse of discretion. See *Pfeifer* v. *State* (1972), 152 Ind. App. 315, 320, 283 N.E.2d 567. If this is a "negative instruction" (whatever that may signify) that "defect" is not apparent to us, nor is any harm to the State apparent. Appellant's argument is too brief and subtle to sustain its burden of convincing us that reversible error was committed.

After quoting Dwenger's instruction No. 5, the State's entire argument concerning it is: "This instruction was ob-

jected to for the reason that it is an incomplete statement of the law, containing no reference to proximate cause." The essence of the instruction was that the defendants could be held responsible for the consequences of the act or omissions of their agents or employees engaged in the performance of the scope of their duties and it was not necessary for the plaintiff to prove that defendants personally committed any of the acts or omissions charged in the complaint. It did not purport to define what the defendants' responsibility was or under what circumstances it would attach. The court's instruction No. 5 properly told the jury that "the Court has not attempted to embody all the law applicable to the cause in one instruction, but in considering any one instruction you must construe it in the light of and in harmony with every other instruction. . . ."

The State's sole argument against Dwenger's instruction No. 6 is that "it was adequately covered by the Court's instruction No. 8." The reasons and authorities stated in rejecting a like argument as to Dwenger's No. 3 require rejection of this objection.

As to the court's instruction No. 13 the objection made in the trial court was that it is incomplete in that it does not define incurred risk as to whether it constitutes contributory negligence. Thereafter the trial court added the sentence: "If you find that a dangerous condition existed at the place where plaintiff was injured and if you further find that the plaintiff incurred the risk thereof, then you may find that the plaintiff was guilty of contributory negligence."

No error being found, the judgment is affirmed.

Buchanan, P.J., and Sullivan, J., concur.

NOTE.—Reported at 341 N.E.2d 776.