James ROSSOW, Defendant-Appellant,

v.

Thomas JONES, Plaintiff-Appellee.

No. 3–1276A297.

Court of Appeals of Indiana,
Third District.

April 30, 1980.

Daniel A. Manion, Doran, Manion, Boynton & Kamm, South Bend, for defendant-appellant.

William H. Albright, Cox & Albright, South Bend, for plaintiff-appellee.

GARRARD, Presiding Judge.

This is a slip and fall case wherein a tenant (Jones) sued his landlord (Rossow) for personal injuries. The undisputed facts disclose that Rossow owned a house which had been converted into a three apartment dwelling. All apartments exit through a single outside door onto a porch. Three concrete steps lead from the porch to the sidewalk.

On December 26, 1975, Jones, who had occupied one of the apartments since September, slipped and fell on the steps as he was attempting to leave the house to go to the grocery. At the time, the steps were covered with a natural accumulation of ice and snow.

Jones brought this suit for personal injuries in small claims division and recovered judgment for $2500. Rossow's appeal contends that he breached no legal duty to Jones and that Jones was guilty of contributory negligence as a matter of law.

The question of the landlord's duty is argued in terms of whether *Purcell v. English* (1882), 86 Ind. 34 correctly states the law. In *Purcell* a tenant slipped upon a snow and ice covered common stairway and fell to the ground below when a railing which had become loose and rotten gave way. On appeal the Supreme Court affirmed a directed verdict against the injured tenant stating that where a common stairway "is rendered unsafe by temporary causes, such as the accumulation of snow and ice, the landlord is not liable to the tenant who uses such stairway with full knowledge of its dangerous condition, unless there is a contract on the part of the landlord to keep the premises in repair and fit for safe use." 86 Ind. 42.

Although the *Purcell* court discounted any distinction based upon whether the area in question was a way common to two or more tenants, in *LaPlante v. LaZear* (1903), 31 Ind.App. 433, 68 N.E. 312 the appellate court permitted recovery by a tenant for a fall occasioned when a latent defect caused a step to break. The court distinguished *Purcell* on the basis that it concerned a temporary covering of snow and ice and because the opinion had expressly excluded the consideration of latent defects from the decision. In *LaPlante* the court stated that a landlord did owe a duty to exercise reasonable care to make the premises reasonably fit as to common passageways and approaches retained under the landlord's express or constructive control.

This same viewpoint was subsequently acknowledged by our Supreme Court in a case dealing with a tenant who was injured when he fell down an elevator shaft in an apartment building. *Tippecanoe Loan & Trust Co. v. Jester* (1913), 180 Ind. 357, 101 N.E. 915. *See generally* 49 Am.Jur.2d, *Landlord & Tenant* § 805.

More recently, in *Coleman v. DeMoss* (1969), 144 Ind.App. 408, 246 N.E.2d 483, the appellate court relied upon the rule announced in *LaPlante* where there was no multi-tenant dwelling, but the evidence disclosed that the means of ingress and egress to the tenant dwelling, which was located behind the landlord's residence on the same tract of real estate, was under the actual control of the landlord and across land under his exclusive control.

Finally, we note that in *Hammond v. Allegretti* (1974), 262 Ind. 82, 311 N.E.2d 821 (Givan, J., and Prentice, J., dissenting) the Supreme Court held that the duty of reasonable care owed to a business invitee does not admit to an exception or reduction in its scope based upon "[a] natural accumulation of ice and snow."

From these authorities we conclude that a landlord does have a duty of reasonable care that the common ways and areas, or areas over which he has reserved control, are reasonably fit and that hazards created through a natural accumulation of ice and snow are not beyond the purview of that duty.[1]

■ In turning to the facts before us, we note at the outset that they are disputed throughout and there are inconsistencies even within the testimony of a particular witness. These, however, are matters beyond the power and purpose of our appellate review. So long as it is not without probative value, we may look only to that evidence which favors the result reached by the trial court. That evidence revealed the following: There had been a hand rail along the steps from the porch to the walk, but the landlord had removed it sometime before the month of December. In addition there had been snow shovels and a box of salt available for cleaning the entryway but these had been locked away by the landlord and Jones could not use them. Moreover, on two or three occasions prior to Jones' injury, Rossow had shoveled the snow from the walkway. However, prior to Jones' fall the ice and snow had been accumulating for a week. During this time the steps were not shoveled. From this evidence the court could have concluded that the landlord failed in his duty to exercise reasonable care that the common stairway was reasonably safe and fit.

■ The question is closer concerning the allegation that Jones voluntarily incurred the risk and was guilty of contributory negligence as a matter of law. The rule is stated in *Stallings v. Dick* (1965), 139 Ind. App. 118, 125, 210 N.E.2d 82, 86,

". . . [T]he voluntary conduct of one exposing himself to dangers which are so obvious, imminent and glaring that no reasonable man exercising due care for his safety would have hazarded them is negligence as a matter of law."

*See also Meadowlark Farms, Inc. v. Warken* (1978), Ind.App., 376 N.E.2d 122.

Yet if reasonable minds could differ, the question is for the trier of fact and we may not reverse on appeal.

■ Here the evidence most favorable to Jones discloses the snow and ice had been accumulating for a week and he well knew of their existence. On the evening in question it was still light enough to see; Jones wore leather boots with rubber soles and attempted to steady himself by a porch column as he descended the steps. There was no evidence that Jones had slipped on the steps before or had seen others slip. Moreover, while the ice and snow had been accumulating for several days, there was no evidence specifically addressing the slipperiness of the steps during this period and whether it remained the same or was worse on the day of the incident.

Clearly, the fact finder could have found that Jones was guilty of contributory negligence. However, from the state of the evidence we are unable to say that any reasonable mind considering the evidence would be required to conclude that Jones failed to exercise ordinary care in attempting to descend the steps that evening. Under such circumstances the result is not contrary to law.

■ Rossow's final contention is that the damages were excessive. It is well settled that the amount of damages awarded will not be deemed excessive if it is within the scope of the evidence before the court. Moreover, where general damages occur for

1. In *Orth v. Smedley* (1978), Ind.App., 378 N.E.2d 20 the court held that upon the facts before it the plaintiff was not entitled to recover because there was no reasonable opportunity for the landlord to have made the way safe between the time it became hazardous and the time plaintiff was injured.

such matters as pain and suffering or bodily impairment, the award may not be set aside unless it appears outrageous or the product of bias and prejudice. *See, e. g., Cooper v. High* (1974), 262 Ind. 405, 317 N.E.2d 177.

■ The evidence favorable to Jones discloses special damages of approximately eight hundred fifty ($850) dollars. In addition, there was evidence of pain and suffering related to low back injury that persisted at the time of trial. From the evidence we cannot say the damages were excessive.

The judgment is, therefore, affirmed.

HOFFMAN, J., concurs.

STATON, J., concurs and files separate opinion.

STATON, Judge, concurring.

I agree with the Majority's conclusion that *Purcell v. English* (1882), 86 Ind. 34, wherein the Court held that a landlord has no duty to clear common entryways of snow and ice, has been overruled by implication. That conclusion, as the trial court also found, is clearly dictated by post-*Purcell* developments in the common law. The demise of the *Purcell* rule is also warranted for public policy reasons, however; those considerations, as hereinafter discussed, lie inherent in the significant changes in our society's housing patterns which have transpired in the ninety-eight years since *Purcell* was decided.

I also agree that it cannot be said as a matter of law that tenant Jones incurred the risk of falling or that he was guilty of contributory negligence in descending the steps. I take issue, however, with the ra-

tionale upon which the Majority reaches that conclusion, for it has pinned its determination to an incomplete statement of the law and a querulous analysis of the facts. Consequently, it is also necessary that the import of the Court's decision here today be clarified.[1]

I.

Purcell and Public Policy

In the ninety-eight years which have elapsed since *Purcell v. English* was decided, Indiana's population has experienced significant changes in its demographic and housing patterns. In the face of the urban growth which has continued through the bulk of the 20th century, rooming house and single family dwellings no longer were sufficient to accommodate our citizens' housing wants. Out of the need for high-density, multi-family dwellings, apartment complexes became a commonplace mode of residential housing in the cities and towns of this state.

Today, roughly one-fourth of Indiana's population resides in rental housing.[2] Among those citizens residing in apartments are people of all ages and stations in life, from the unmarried to families to senior citizens. Prior to our decision here today, a landlord owed no duty to these tenants to clean common entryways of snow and ice, although a landlord did have a duty to maintain the common area in a safe condition. *Coleman v. DeMoss* (1969), 144 Ind.App. 408, 246 N.E.2d 483; *LaPlante v. LaZear* (1903), 31 Ind.App. 433, 68 N.E. 312. Happily, today marks the demise of the

---

1. I note that I also concur with the Majority's conclusion that landlord Rossow breached his duty to clear the ice and snow from the entryway. That issue, which was consolidated by the Majority with Rossow's claim that the fact finder ignored evidence submitted by him relative to the breach-of-duty issue, rested on the question whether the snow was newly-fallen or had accumulated over a period of time. While the evidence regarding when the snow and ice had accumulated was conflicting, we cannot reweigh the evidence. Finally, I note that I also agree with the Majority's resolution of the damages issue.

2. The figure "one-fourth" is based on data compiled in United States Department of Commerce, Bureau of the Census, Vol. 1, *Housing Characteristics for States, Cities, and Counties* no. 16 (Indiana), Table 2, p. 16–8 (1972). According to those figures, the total population living in non-institutional housing in 1970 was 5,057,210. The number of rental units occupied at that time was 456,245, with an average of 2.9 persons residing in each unit. Consequently, as of 1970, 26.2 per cent of our citizens lived in rental units.

*Purcell* rule, for it no longer remained a workable proposition of law.

While the practical difficulties inherent to the proposition that tenants share a communal responsibility to clear the common entryways of snow and ice can well be imagined, it is also true that many tenants are simply unequipped to perform the task of snow and ice removal. They sometimes lack the physical wherewithal that is necessary; they oftentimes lack the equipment (and storage space) necessary to the task. *See generally, Langley Park Apartments, Sec., H., Inc. v. Lund* (1964), 234 Md. 402, 199 A.2d 620, 623.

These concerns were ably addressed in the landmark case of *Fuller v. Housing Authority of Providence* (1971), 108 R.I. 770, 279 A.2d 438, 49 A.L.R.3d 382. Therein, the Court adopted the so-called "Connecticut" rule by which the duty to clear snow and ice from common entryways rests with the landlord:

> "We believe that today a landlord, armed with an ample supply of salt, sand, scrapers, shovels and even perhaps a snow blower, can acquit himself quite admirably as he takes to the common passageways to do battle with the fallen snow, the sun-melted snow now turned to ice, or the frozen rain. We fail to see the rationale for a rule which grants a seasonal exemption from liability to a landlord because he has failed to take adequate precautions against the hazards that can arise from the presence of unshoveled snow or unsanded or salt-free ice found in the areas of his responsibility but yet hold him liable on a year-round basis for other types of defects attributable to the workings of mother nature in the very same portions of his property. If a landlord may be liable for a tenant's injury caused by a defect on a common premises such as a rusted handrail or a rotted step, why should he be released from liability where the injury is caused by a natural accumulation of snow and ice which is negligently permitted to remain upon the surface of the common passageway. To draw

such a distinction, said the court in *Langhorne Road Apartments, Inc. v. Bisson*, [207 Va. 474, 150 N.E.2d 540] supra, was '. . . to create in the law another of those strange anomalies which, once created, live on to haunt successive legal generations.'

> "The soundness of the Connecticut Rule becomes evident when one considers today's tendency for apartment-house living. In any one building are apt to be found tenants of all ages. Some may seldom wander far from the apartment complex. They should be furnished with reasonably safe common ways as they come and go to and from their apartments. One could see the difficulty of a tenant, faced with the Massachusetts Rule,[3] sought to seek agreement among his fellow tenants for the sharing of the responsibility of removing snow and ice which have collected on the common premises. The landlord with a minimum of expense can and should attend to these details." [Footnote supplied.].

279 A.2d 440, 49 A.L.R.3d at 385–386.

In the wake of *Hammond v. Allegretti* (1974), 262 Ind. 82, 311 N.E.2d 821 (landowner or occupier of business premises has a duty to exercise reasonable care for protection of invitees), *Poe v. Tate* (1974), 161 Ind.App. 212, 315 N.E.2d 392 (*Hammond* duty extends to natural accumulations of ice and snow), *Coleman v. Demoss* (1969), 144 Ind.App. 408, 246 N.E.2d 483 (landlord has duty to maintain areas within his control in a safe condition), *Tippecanoe Loan & Trust Co. v. Jester* (1913), 180 Ind. 357, 101 N.E. 915 (landlord has duty to maintain common elevator in safe condition for tenant's use), and *LaPlante v. LaZear* (1903), 31 Ind.App. 433, 68 N.E. 312 (landlord has a duty to maintain common stairway in safe condition for tenants' use), it would have indeed created a "legal anomaly" to perpetuate the *Purcell* rule. The rejection of the *Purcell* rule, however, was also compelled by the above-discussed policy considerations and practical inefficacy of the rule. For these reasons, we stand today with the ma-

---

**3.** The "Massachusetts Rule" represents the rule laid down in *Purcell.* See 49 A.L.R.3d at 387.

jority of jurisdictions which hold that a landlord has a duty to clear common entryways of natural accumulations of snow and ice. *See* 49 A.L.R.3d 387 (1973).[4]

## II.

### Incurred Risk-Contributory Negligence

Implicit in the Majority's opinion is the suggestion that incurred risk and contributory negligence are one and the same defense. It is true that we are confronted here with factual circumstances wherein, as is oftentimes the case, the doctrines overlap in application and are "virtually indistinguishable." *Kroger Co. v. Haun* (1978), Ind. App., 379 N.E.2d 1004, 1007–13;[5] *Petroski v. Northern Indiana Pub. Serv. Co.* (1976), Ind.App., 354 N.E.2d 736, 744–45. Technically, however, the defenses are distinct, each with its own definition.

The Majority has characterized the "rule" of incurred risk and contributory negligence against which tenant Jones' conduct must be measured as follows:

"'[T]he voluntary conduct of one exposing himself to dangers which are so obvious, imminent and glaring that no reasonable man exercising due care for his safety would have hazarded them is negligence as a matter of law.'"

The quotation relied upon by the Majority—which has been drawn from *Stallings v. Dick* (1965), 139 Ind.App. 118, 125, 210 N.E.2d 82, 86—does not reflect the true nature of the defenses-at-issue. Both incurred risk and contributory negligence have been specifically defined by our Courts.

The doctrine of incurred risk was explicitly explained in *Stallings v. Dick*:

"The doctrine of incurred risk is based upon the proposition that one incurs all the ordinary and usual risks of an act upon which he voluntarily enters, so long as those risks are known and understood

by him, or could be readily discernible by a reasonable and prudent man under like or similar circumstances. *Brazil Block Coal Company v. Hoodlet*, [129 Ind. 327, 27 N.E. 741] supra; *Ridgway v. Yenny* (1944), 223 Ind. 16, 57 N.E.2d 581; *Pierce v. Clemens*, [113 Ind.App. 65, 46 N.E.2d 836] supra."

139 Ind.App. at 129, 210 N.E.2d at 88. Contributory negligence, on the other hand, was defined by our Supreme Court in *Memorial Hospital of South Bend, Inc. v. Scott* (1973), 261 Ind. 27, 36, 300 N.E.2d 50, 56.

"The general rule on the issue of the plaintiff's contributory negligence is that the plaintiff must exercise that degree of care that an ordinary reasonable man would exercise in like or similar circumstances. *Bain, Admx. v. Mattmiller* (1938), 213 Ind. 549, 13 N.E.2d 712. Contributory negligence is conduct on the part of the plaintiff, contributing as a legal cause to the harm he has suffered, *which falls below the standard to which he is required to conform for his own protection.* Restatement 2d of Torts § 463." (Emphasis original.).

These tempered and more complete statements of the law best describe the standards against which tenant Jones' conduct is measured.

The Majority's reliance on the broad statement of law extracted from *Stallings v. Dick* is perhaps responsible for its conclusion that "Clearly, the fact finder could have found that Jones was guilty of contributory negligence." Albeit dicta, it is imperative that the mis-leading nature of the Majority's statement be examined.

Tenant Jones was attempting to leave his apartment to go to the neighborhood grocery store. He was required to pass through an entryway common to him and his fellow tenants, *for that was his sole means of ingress and egress to his apart-*

---

4. Commentators also agree that the better rule is that the landlord has a duty to clear common entryways. *See, e. g.*, Prosser, *Law of Torts*, § 63, p. 420 (4th Ed. 1971); Harper & James, *The Law of Torts* § 27:17, p. 1516- 1517 (1956).

5. *Kroger Co. v. Hahn* represents an excellent analysis of the distinctions between the doctrines and the confusing use of terminology which surrounds them.

ment.[6] In the entryway, he encountered the slippery surface (ice one and one-half inches thick). He understood the danger; the snow and ice had been accumulating during the previous week. He grasped the guardrail at the edge of the porch and moved cautiously across the entryway. When he reached the stairway, he tried to steady himself by clinging to the porch pillar located at the top of the stairway.[7] Nevertheless, his feet slipped from under him. Jones sustained various injuries and was knocked unconscious in the resulting fall.

These facts constitute the evidence contained in the record which is most favorable to the judgment, consistent with the applicable standard of review which governs this Court's review. *Kroger Co. v. Haun, supra,* at 1007; *In re Estate of Tynes* (1974), 161 Ind.App. 408, 315 N.E.2d 745, 747. Clearly, this evidence supports the negative judgment entered against landlord Rossow with respect to his tendered defense.

In that respect, I point out that incurred risk and contributory negligence are affirmative defenses. In placing the defenses in issue, landlord Rossow bore the burden of proving that tenant Jones' conduct fell below the standards which comprise incurred risk and contributory negligence. Ind. Rules of Procedure, Small Claims Rule 4(A); *Kroger v. Haun, supra*; *State v. Collier* (1975), Ind.App., 331 N.E.2d 784, 790; *Dreibelbis v. Bennett* (1974), 162 Ind. App. 414, 319 N.E.2d 634, 638.

I emphasize that landlord Rossow bore the burden of proof because the Majority, in concluding that the "fact-finder could have found that Jones was guilty of contributory negligence", has relied in part on the fact that *no* evidence was presented regarding: 1) whether Jones had previously slipped on the steps, 2) whether Jones had seen others slip, and 3) the "slipperiness" of the steps. *If* the fact finder had found Jones guilty of contributory negligence, this absence of evidence would have provided no support for that finding, since Rossow held the burden of proof on that issue. For that same reason, the absence of evidence in no way supports the Majority's statement that Jones might have been barred from recovery on the basis that he was contributorily negligent.

The remainder of the evidence upon which the Majority apparently bases its conclusion that "clearly" Jones might have been found guilty of contributory negligence is: 1) Jones "well knew" that ice and snow were present; 2) "it was still light enough to see"; and 3) "Jones wore leather boots with rubber soles." In the factual context before us, it would be very difficult to affirm a finding of contributory negligence—assuming, as the majority has, that such a finding could have been rendered.

Although not emphasized by the Majority, I reiterate that the common entryway was Jones' sole means of ingress and egress for his living quarters. Of course, he "well knew" that ice and snow were present on the entryway. He passed over the entryway on a daily basis. Before his fall, the snow and ice had been accumulating throughout the week. Even though he was aware that the entryway was covered with ice and snow, he had no "choice of ways"; [8]

---

6. Landlord Rossow himself testified that he had asked Jones not to use a stairway located at the back of the building because it was "dangerous."

7. Landlord Rossow had removed the stairway railing four months previous to Jones' fall.

8. The "choice of ways" doctrine, a component of the law of incurred risk and contributory negligence, is applicable only when alternative paths are available, and the path chosen involves a readily-apparent great danger which a person of "ordinary prudence" would have avoided. *State v. Dwenger* (1976), Ind.App., 341 N.E.2d 776, 778 80; *Easley v. Williams*

(1975), 163 Ind.App. 38, 321 N.E.2d 752, 754. The effect of the doctrine in circumstances such as those present was well-stated in *Fuller v. Housing Authority of Providence* (1971), 108 R.I. 770, 279 A.2d 438, 441, 49 A.L.R.3d 382, 386:

"We would also point out that a tenant, who has at his disposal more than one route of ingress and egress to his premises, may not benefit from the Connecticut Rule if it be shown that he was aware that his landlord had furnished him with one reasonably safe approach to his dwelling place but instead chose to travel on another yet unshoveled or unsalted passageway."

if he was to reach the grocery store, he was required to hazard the icy surface. That usage can neither be characterized as "voluntary" nor "unreasonable," the critical components of the doctrines of incurred risk and contributory negligence. Our Courts have so held. *State v. Dwenger* (1976), Ind.App., 341 N.E.2d 776, 779–80; *Easley v. Williams* (1975), 163 Ind.App. 38, 321 N.E.2d 752, 754.

Similarly, the manner in which Jones used the steps cannot be characterized as unreasonable or imprudent. The evidence is uncontradicted that Jones, because he was aware of the slippery surface underfoot, exercised extreme caution in his attempt to cross the entryway. The fact that "it was still light enough to see", while no doubt serving to remind him of the challenge before him, made the surface no less treacherous.

The basis for the Majority's observation that "clearly" Jones could have been found guilty of contributory negligence is consequently reduced to the fact that Jones wore "leather boots with rubber soles." Whatever the skid-resistant propensities of Jones' boots *vis-a-vis* other footwear, it cannot plausibly be said that—in the face of other evidence presented—Jones could properly have been barred from recovery on the basis of his footwear.

In summary, contrary to the Majority's statement, the fact finder would have clearly erred had it somehow found that Jones' cautious and careful usage of his sole means of ingress and egress barred his recovery for the injuries sustained in the fall. Without question, however, I agree with the Majority's ultimate resolution of the affirmative defense issues. It cannot be said as a matter of law that Jones incurred the risk of falling or was guilty of contributory negligence in attempting to cross the entryway.

I concur.