## KINDEL, ADMINISTRATOR, v. FRENCH.

[No. 23,778.   Filed June 3, 1921.]

1. EXECUTORS AND ADMINISTRATORS.—*Claims Against Estate.— Defense of Payment.—Evidence.—Sufficiency.*—In an action on a claim against a decedent's estate, evidence *held* insufficient to sustain the defense that the claim had been paid pursuant to an agreement that claimant would credit thereon money received by him from the proceeds of an insurance policy on decedent's life.   p. 598.

2. EVIDENCE.—*Action on Claim Against Estate.—Decedent's Statements.—Admissibility.*—In an action on a claim against a decedent's estate, evidence as to statements by decedent, not heard nor assented to by claimant, were incompetent as against him.   p. 598.

3. EXECUTORS AND ADMINISTRATORS.—*Action on Claim against Estate.—General Denial.—Burden of Proof.*—In an action on a claim against a decedent's estate, the answer of general denial put upon claimant the burden of proof of establish the amount due him.   p. 599.

4. EXECUTORS AND ADMINISTRATORS.—*Claims Against Estate.— Promissory Notes.—Attorney's Fee.—Burden of Proof.*—In an action on a claim against a decedents estate, in the absence of a stipulation on the subject by the parties, it is error to add a sum for attorney fees to the amount otherwise due on a promissory note which merely provides for such fees, without indicating the amount thereof, unless there is evidence to prove how much is due.   p. 599.

From Adams Circuit Court; *David A. Smith,* Judge.

Action by Amos French on a claim against the estate of Amos Hubert French, deceased. From a judgment for plaintiff, the administrator, Albert S. Kindel, appeals. (Transferred from the Appellate Court under §1392, subdiv. 4, Burns' Supp. 1918, Acts 1915 p. 149.) *Affirmed.*

*Dore B. Erwin* and *William H. Eichhorn,* for appellant.

*A. W. Hamilton* and *C. J. Lutz,* for appellee.

EWBANK, J.—The appellee filed a claim against the estate of appellant's decedent, based upon three promissory notes, for sums aggregating $5,591.43, with interest amounting to $634.57, at the time of the trial and finding, each of which notes stipulated to pay attorney fees, but did not state in what amount. The appellant filed answers of (1) general denial, (2) payment, and (3) that on and prior to February 9, 1917, his decedent owed appellee $5,000, and appellee was surety for him for $5,000 more, owed to others, and he was greatly in debt; that on said date the decedent caused a policy for $10,000 to be written on his life and made payable to appellee, who was his father; that decedent then had a wife and three minor children dependent upon him; that he procured said policy to secure and indemnify appellee by reason of the money he had loaned to decedent and the obligations he had incurred as surety for decedent; and that after the death of appellant's decedent the appellee received from the insurance company $10,000 of such insurance money, but refused to apply it to satisfy decedent's indebtedness.

A reply of general denial closed the issues, which were tried by the court, without a jury. The court found for appellee that there was due him on the notes $6,476, being $250 in excess of the principal and accrued

interest, and rendered judgment for said amount of $6,476 and costs.

Appellant's motion for a new trial for the alleged reasons: (a) that the amount of the recovery was erroneous, being too large, and (b) that the decision was not sustained by sufficient evidence, and (c) was contrary to law, was overruled, and appellant excepted, and thereafter duly presented and filed his bill of exceptions containing the evidence, and perfected his appeal.

The appellee read the three notes in evidence, with proof of decedent's signature thereto, and rested. The appellant introduced evidence to the effect that decedent made out his application for the insurance policy, stating therein that he desired the insurance paid to appellee in the event of his death, and that appellee bore the relationship to him of "father," and that the policy, as issued, was for $10,000 and was payable to "Amos French, his father, beneficiary, if living, otherwise to the insured's executors, administrators or assigns." Appellant also read in evidence appellee's receipt for $10,000 "in settlement of all claims under" said policy, and a letter to the insurance company, signed by the appellee, which stated that he had received a check for $10,000 "in full payment of the claim of Amos Hubert French, my son," and stating that the policy "was payable to my interest owing to the financial help which I had given him," referring to the son. Appellant also introduced evidence that appellee is and always has been deaf and dumb, and has never been able to hear anything or to speak, and that when the insurance policy was delivered by the insurance agent to appellant's decedent, the appellee was there, and that decedent handed him the policy, and after some communication between decedent and appellee by signs, the latter read the policy, nodded his head and smiled, and retained the policy in his hands until the agent left.

There was no evidence whatever of the total amount of decedent's indebtedness at the time of his death, nor of his indebtedness to appellee at that time, nor 1. of his indebtedness for which appellee was surety at that time. And there was no evidence that appellee ever entered into any agreement, or ever said a word, wrote a line, or made a sign signifying his assent to any arrangement or understanding that the $10,000 of life insurance money should be applied to discharge the notes sued on, either in whole or in part.

Appellee could have been called and examined by appellant as a witness (§526 Burns 1914, Acts 1883 p. 102), but he did not testify.

Over objections and exceptions by appellee, and over motions to strike out each of the answers as they were given, appellant introduced the testimony of four witnesses of statements made by the decedent which were not heard by, nor communicated to appellee, nor in any manner assented to by him, concerning decedent's purpose in obtaining the policy of life insurance, and what decedent said he expected his father to do, and how much he said certain of his debts were at the time the policy was taken out, several months before he died.

One brief states that the estate is insufficient to pay decedent's debts, and the other states that his estate would not pay more than one-third of his debts; one brief further states that decedent owed appellee $5,000 and owed $5,000 more for which appellee was bound as surety, and the other states that the total owed to appellee and for which he was surety exceeded $13,000. But we find no evidence of either of these facts in the transcript.

This evidence did not prove, nor tend to prove, that appellee had bound himself by an agreement to 2. do with the insurance money what the witnesses said decedent seemed to expect of him. Evidence

of the decedent's statements, not heard nor assented to by appellee, was not competent, as against appellee, to prove anything, and the court might properly have sustained appellee's objections and have excluded all such evidence, instead of merely ignoring it when making his decision. The evidence wholly failed to prove either defense as set up by the second and third paragraphs of the answer. But the answer of general denial put upon appellee the burden of proof to establish the amount due him, including the amount due as attorney fees. And the rule is well established that in the absence of a stipulation on the subject by the parties it is error to add a sum for attorney fees to the amount otherwise due on a promissory note which merely provides for "attorney fees," without indicating the amount, unless evidence is heard which fairly tends to prove how much is due. *Bowser* v. *Palmer* (1870), 33 Ind. 124; *Wyant* v. *Pottorff* (1871), 37 Ind. 512; *Lindley* v. *Sullivan* (1893), 133 Ind. 588, 590, 32 N. E. 738, 33 N. E. 361; *Shoup* v. *Snepp* (1899), 22 Ind. App. 30, 35, 36, 53 N. E. 189; *Winslow Gas Co.* v. *Plost* (1919), 69 Ind. App. 611, 122 N. E. 594.

There being no evidence to support an award of attorney fees, the finding was erroneous, being $250 too large and, unless this amount, with the interest thereon from March 18, 1919, when the decision was made (§7951 Burns 1914, §5199 R. S. 1881), is remitted by procuring a proper entry to be made in the circuit court and furnishing proof of that fact to this court, within thirty days from the date of filing this opinion, the judgment will have to be reversed.

Upon a proper showing that such remittitur has been so entered, the cause will be affirmed; but the costs of the appeal, in either event, must be taxed against the appellee.