Clyde F. PARRISH, Shirley H. Parrish, John A. Roshel, Jr., William G. Kessel, Clifford G. Schultz, Betty L. Schultz, Kenneth E. Borders, Irene R. Borders, Robert G. Clouse, and Bonnidell A. Clouse, Appellants-Defendants,

v.

TERRE HAUTE SAVINGS BANK, An Indiana Corporation, Appellee-Plaintiff.

No. 1–181A31.

Court of Appeals of Indiana, Fourth District.

Feb. 9, 1982.

Robert A. Hutchens, Patrick, Gabbert, Wilkinson, Goeller & Modesitt, Terre Haute, for appellants-defendants.

Arnold H. Brames, Brames, Bopp & Haynes, Terre Haute, for appellee-plaintiff.

CONOVER, Judge.

Defendants-appellants Parrish et al., Shareholders of R.P.S. Industries, Inc. (R.P.S.) appeal from a judgment entered in favor of plaintiff-appellee Terre Haute Savings Bank (Bank) pursuant to a jury's verdict. The Bank sued the shareholders who had individually signed a promissory note payable to the bank when the corporation defaulted in making the payments provided in the note.

We affirm in part and reverse in part.

FACTS

On September 11, 1978, Clyde Parrish, President of R.P.S. directed a letter "to whom it may concern" to the Bank requesting a short term capital loan of seventy-five thousand dollars for operating expenses of R.P.S.

After reviewing financial statements of R.P.S. and its shareholders, the Bank sent a letter to Parrish dated September 22, 1978, advising him the Bank approved the loan. The letter further stated, "This approval is also subject to personal signing of the note by the following: Clyde F. Parrish and wife

Shirley, John A. Roshe, Jr., Clifford G. Shultz and wife Betty, Kenneth Borders and wife Irene, William G. Kessel, Robert G. Clouse and wife Bonnidell, Frank W. Jerse and wife Dorothy when they return to Terre Haute." The Bank did not require R.P.S. to sign the note. The loan was to be retired by quarterly payments of principal and interest.

On the same day all shareholders and their spouses, except Mr. and Mrs. Jerse who were out of the country, signed the promissory note. All the signers were well versed in business transactions, having signed similar notes for R.P.S. on prior occasions. None of the signers tried to add conditions to the note regarding his personal liability prior to signing. The terms "I promise to pay to Terre Haute Savings Bank" appeared on the face of the note they signed.

Following Parrish's instructions the Bank then made a check for the proceeds payable to R.P.S. Industries, Inc. The shareholders understood R.P.S. was to pay off the loan. Later, the note went into default and the bank sued the ten shareholders and their spouses who had signed it.

The ten appellants raised several defenses at trial. They claimed the loan was not a personal loan; rather, they had signed only as guarantors of R.P.S. Therefore, R.P.S. should be principally liable on the note. Next, they alleged the note was incomplete on its face as it was not signed by Frank and Dorothy Jerse or R.P.S. Therefore, the note was null and void as to them. Lastly, they contended that the signatures of all the shareholders had been a condition precedent to the approval of the loan, and such a condition could not have been unilaterally waived by the Bank. After hearing the evidence, the jury returned a verdict for the Bank, awarding damages of $78,205.30 and attorney fees of $5,000. From this judgment defendants appeal.

## ISSUES

On appeal, defendants-appellants raise the following issues:

1. Where the signing shareholders believe all shareholders of a corporation and their spouses personally will sign a promissory note payable to the promissee bank to induce it to pay the proceeds of the loan to their corporation, but less than all of the shareholders and spouses actually do so and default occurs, whether the persons who signed the note are jointly and severally liable thereon.

2. Whether the signers of such a note are liable if the signing thereof by all shareholders and their spouses was made a condition precedent to the making of the loan to their corporation by the promissee bank, but less than all of them actually sign it.

3. Since the proceeds of the loan were paid to the corporation, whether there was adequate consideration to bind the signing shareholders when the note went into default.

4. Whether the instrument was materially altered because the signatures of one shareholder and his wife were not obtained on the note.

5. Whether the jury's verdict as to attorney fees was supported by sufficient evidence.

## DISCUSSION

### I.

The first issue raised concerns the failure of all contemplated parties to sign the promissory note. Appellants contend the failure of Frank and Dorothy Jerse to sign the note makes it incomplete on its face. Since it is incomplete, appellants argue, the note is ineffective to bind those parties who did not sign. We disagree with appellants' contention.

In *Curtis v. Hannah*, (1981) Ind.App., 414 N.E.2d 962, we said the intent of the parties determines whether the signers are liable where less than all the proposed parties execute the document in question. We must look to the language used by the parties in light of the surrounding circumstances and the practical and mutual construction placed thereon as shown by their acts and conduct before any controversy

arose. *Curtis, supra,* at 963–64 quoting from *Kaneko v. Okuda,* (1961) 195 Cal. App.2d 217, 225, 15 Cal.Rptr. 792, 796–97.

■ Even where it appears that it was intended that others sign an agreement, it is not necessarily invariably true that all must sign before any are bound. This depends upon whether part of the consideration was that others would also sign and be bound jointly with those who did sign. It can be assumed that the parties signing an agreement are bound thereby, unless it affirmatively appears they did not so intend unless others also signed. *Curtis, supra,* at 964, quoting *Cox v. Berry,* (1967) 19 Utah 2d 352, 357, 431 P.2d 575, 579. Unless there is an express intention to the contrary, the instrument is valid and effective against appellants.

■ The facts most favorable to the Bank show Parrish knew all the signatures had not been obtained, yet he still urged approval of the loan. After the Bank agreed to accept only ten signatures, Parrish directed the check to be made out to R.P.S. Industries and the Bank complied. This benefited both the corporation and the individual shareholders. At no time did any of the appellants tell the bank they would not be bound by the note if less than the twelve signatures appeared thereon. This was sufficient evidence for the jury to find the appellants intended to be bound by the note even if less than all the intended signatories executed it.

Appellants argue it was error for the trial court to deny their tendered instruction number 10. Defendants' instruction 10 states:

"A promissory note which has not been signed by all of the parties for whom signature lines are provided on the note is incomplete and imperfect, and is of no force and effect."

"Accordingly, if you find that the promissory note in question has not been signed by all of the parties for whom signature lines have been provided, then the defendants would not be liable on Count I of plaintiff's Complaint."

This instruction eliminates the question of whether the parties intended the note to be binding if less than all of the proposed parties signed it. This is a question for the jury to determine. The trial court properly refused to give defendant's instruction 10.

## II.

The second issue raised in appellant's brief is whether a party who signs an instrument is bound if other contemplated parties fail to sign the instrument when the signature of all parties was a condition precedent to the loan.

At various times throughout the day of September 22, 1978, each of the ten appellants came into the bank to sign the promissory note. No signer mentioned any conditions under which they were signing. None of the defendants testified to seeing the note beforehand, but no one objected to the form of the instrument.

Parrish signed the note last. When the bank officer realized that the Jerses had not signed the note he explained to Parrish that the loan committee would have to reconvene to agree to give the loan on only ten signatures. Parrish, however, as President of R.P.S. Industries convinced the bank officer, a member of the loan committee, that he would have the Jerses come in and sign the note when they returned to the country. Upon this assurance by Parrish the bank official advanced the loan with only ten signatures.

■ The Bank contends this advancement of the loan on ten signatures indicated that it thereby waived its initial request for twelve signatures. Further the Bank argues, by accepting and using the funds involved, the shareholders agreed to this waiver of the initial terms of the loan. We agree with the Bank's contentions.

■ A condition in a contract, including a condition precedent may be waived by the conduct of a party thereto. *Johnson v. Bucklen, et al.,* (1894) 9 Ind.App. 154, 36 N.E. 176. Furthermore, once a condition precedent has been waived, and such waiver has been acted upon, the failure to perform

the condition cannot be insisted upon as a forfeiture of the contract. *Farley v. Farley*, (1860) 14 Ind. 331.

Acceptance and immediate use of the loan by R.P.S. tends to show that the shareholders accepted the contract according to its tenor at the time it was signed, and they expected to be bound accordingly. In fact, Parrish stated at trial that he only considered the note to be ineffective due to the lack of the Jerses' signatures later, after talking to his attorney. We find sufficient evidence whereby the jury could reasonably conclude the parties waived the condition requiring all twelve individuals to sign the note.

The shareholders claim the Court's Final Jury Instruction 11 was improperly given. Instruction 11 states:

"A condition precedent is one which is to be performed before the contract becomes effective or which must be fulfilled before the duty to perform an existing contract arises. Therefore, if you determine from a consideration of the evidence that the Bank and the ten individuals agreed that the proceeds of the loan would not be disbursed until the loan was executed by all shareholders and their spouses, or that the Bank and the ten individuals agreed that the ten individual defendants would not be required to repay the money unless all shareholders and their spouses had executed the note, then you may not return a verdict against the ten individual defendants.

"However, a condition precedent may be waived by the conduct of a party thereto. But if you should find there existed a condition precedent to the promissory note and that the condition had not been fulfilled but that the ten individual defendants voluntarily and knowingly waived that condition, then there would be no condition precedent to the agreement."

Appellants argue the evidence conclusively established the existence of a condition precedent to the execution of and liability on the promissory note. They claim allowing a jury to find the condition precedent

had been waived was inappropriate since no evidence existed to show an intent to waive the condition. However, the advancement of funds by the Bank, and acceptance and use of the money by the shareholders' corporation is evidence of a waiver of the condition which the jury could properly consider as the finder of the facts. There was no error in the giving of this instruction to the jury.

■ Appellants further contest the trial court's refusal to give defendants' tendered instructions 5 and 6. Both instructions deal with failure of a condition precedent. It is well settled that a trial court may refuse a tendered instruction if the proposition of law stated in the tendered instruction is sufficiently covered in other instructions given by the court. *Chaney v. Tingley*, (1977) Ind.App., 366 N.E.2d 707, 711. Here the essence of defendants-appellants' tendered instructions was covered by the court's Final Instruction 9, 10 infra, and 11 supra, dealing with failure of a condition precedent.

### III.

The third issue raised by appellants is whether there was adequate consideration to bind the shareholders to the promissory note. They contend since the loan check was made out to R.P.S. Industries, Inc., they did not receive any personal benefit under the note. Therefore they should prevail on their defense of failure of consideration. We find this argument to be without merit.

■ It is true that failure of consideration is a defense against any person not having the rights of a holder in due course. Ind.Code 26–1–3–408. We find, however, that there was sufficient consideration. It is not necessary that consideration flow directly from the payee to the makers of the note in order to bind the makers, so long as they do receive some benefit under the note. *Moehlenkamp v. Shatz*, (1979) Ind. App., 396 N.E.2d 433. The relief from debt on the part of a corporation can be valid consideration to uphold a promissory note

signed by shareholders with a vital interest in the corporation. *United States Rubber Co. v. Moon*, (1931) 93 Ind.App. 571, 179 N.E. 26.

A contractual benefit is defined by Black's Law Dictionary 4th ed. (1968), as a term "not limited to pecuniary gains, nor to any particular kind of advantage," but to whatever "enhances the value of the property" of a citizen.

■ The loan given by the Bank was used by R.P.S. Industries to cover its operating expenses and enable it to enhance its profits. R.P.S. was a small corporation with only a few shareholders. Each one had a substantial investment in the corporation to protect, and each one could expect to reap the profits of the corporation if it succeeded as a business venture. The loan was sought in anticipation of increasing the profits of R.P.S. We find this sufficient consideration to support the promissory note.

The trial court issued the following instruction concerning the defense of failure of consideration:

"Court's Final Instruction No. 10

"The ten individual defendants have raised the defense of failure of consideration. A Promossory note is not enforce(able) unless it is supported by consideration. Consideration may consist of a benefit to the promissor or to another. Therefore, if you should find by a preponderance of the evidence that in return for executing the promissory note the ten individual defendants received no benefit or not (sic) other party under the direction of the ten individual defendants received the benefit, then you may not return a verdict against the ten individual defendants. The ten individual defendants have the burden of proving failure of consideration."

Appellants claim there was no evidence at trial to show valid consideration, and therefore Final Instruction No. 10 was incorrectly given. Since consideration need not be a direct monetary benefit to a party, but may be indirect as well, we find no error in the giving of this instruction.

We further note that Final Instruction 10 adequately covers the issue of consideration as it relates to the current case. Therefore the trial court properly refused defendants' tendered instructions 2 and 3.

Appellants contest the Court's Final Instruction No. 9. The instruction states:

"Plaintiff's Complaint is in two counts. This means that you, as jurors, may only accept one of its theories.

"In order to recover under Count I of Plaintiff's Complaint, the Plaintiff has the burden of proving by a preponderance of the evidence the following propositions.

"FIRST: That the ten individual Defendants executed and delivered the promissory note in question to the Plaintiff as individual co-makers or co-principal obligors with the intention that it be in full force and effect.

"SECOND: That all conditions precedent, if any, to the effectiveness of the note have been satisfied.

"THIRD: That the amount is owing and due to the Plaintiff on the note.

"If you find from a consideration of all the evidence that these propositions have been proved, then your verdict should be for the Plaintiff and against the ten individual Defendants, however, if you find from a consideration of the evidence that any of these propositions have not been proven or that there has been a failure of consideration, your verdict should then be for the Plaintiff and against the corporation Defendant, R.P.S. Industries, Inc., only."

Appellants contend this instruction is inapplicable as the uncontroverted evidence shows a condition precedent that had not been waived by any party, and that there had been an absolute failure of consideration. Since we have discussed these arguments in sections II and III above, we merely state here the instruction was proper as given.

### IV.

■ The fourth issue assigned as error concerns whether the Bank's failure to ob-

tain the signatures of Frank and Dorothy Jerse constituted a material alteration of the contract. Appellants assert that by failing to obtain signatures from Frank and Dorothy Jerse the Bank wrongfully released or discharged the Jerses' liability on the note without the consent or agreement of the other obligors. They claim this increased the remaining ten signers' individual liability, that is they would each be responsible for one tenth rather than one twelfth the total share of the debt because of the wrongful release.

In their argument, appellants refer to themselves as sureties or guarantors of the loan rather than as principal debtors. They claim R.P.S. is the principal debtor, they being accommodating parties only to the loan.

There is however, no evidence in the record that the Bank considered R.P.S. to be the maker of the promissory note. The letter to Parrish expressing the original conditions of the loan did not require R.P.S. to sign the loan. While a mailing address for R.P.S. was put onto the promissory note this was merely for convenience purposes. Parrish was never asked to sign the note as President of R.P.S. The appellants' contention that they were only sureties or accommodating parties is not persuasive.

As co-makers, they signed a promissory note containing the words "I promise to pay." This promise indicated their agreement to joint and several liability thereon. Ind.Code 26–1–3–407 states in part that "any alteration of an instrument is material which changes the contract of any party thereto in any respect, including any such change in (a) the number or relations of the parties." Official comments to this section in the Uniform Commercial Code explain that change in the number or relation of the parties refers to those changes which alter the contract of the one who has signed. The contract between the bank and individuals involved was completed when each one signed the note. The Bank's failure to obtain the signatures of Frank and Dorothy Jerse did not materially alter the contract between the individual signers and the Bank.

As no material alteration in the contract was shown, the trial court correctly refused to give defendant's tendered instruction number 7 dealing with material alteration of the contract. If no evidence exists at trial to support a tendered instruction, that instruction should be denied. *Easley v. Williams*, (1975) 163 Ind.App. 38, 321 N.E.2d 752.

Appellants also complain of the trial court's refusal to give tendered instructions relating to accommodating party status. No evidence was presented at trial to show defendants were accommodating parties. Mere testimony by defendants that they assumed they were signing as accommodating parties is only evidence of an intent to be bound as maker, and does not relate to the factual question of whether they actually were accommodating parties. Again, before any instruction is proper there must be sufficient evidence in the record to support the instruction. *Easley v. Williams, supra.* Accordingly, there was no error in refusing to give defendants' instructions 1 and 4.

Additionally we find no error in the trial court's refusal to give defendants' instruction number 8. Final instructions 4, 9, 10 and 11 sufficiently cover the law regarding the Bank's burden of proving the various elements of its case.

V.

Appellants' fifth argument concerns whether there was sufficient evidence to sustain the jury's award of reasonable attorney fees when the only evidence at trial consisted of testimony by a bank officer of what fee the bank's counsel would charge.

The promissory note signed by appellants provided for payment of reasonable attorney fees in the event of default. In the absence of a stipulation on the subject by the parties, it is error to add a sum for attorney fees to the amount otherwise due on a promissory note where it merely provides for "attorney fees" without indicating the amount, unless evidence is heard which fairly tends to prove how much is due. *Kindel v. French*, (1921) 190 Ind. 595, 131 N.E. 227. A finding by the court as to the

value of an attorney's services should be supported by testimony or evidence. *Sears, Roebuck & Co. v. State*, (1967) 248 Ind. 169, 225 N.E.2d 175, 183.

While some relaxation in this rule has been allowed when the attorney's fees are set by a trial court judge, this relaxation is due to the judge's expertise in the area. *Marshall v. Russell R. Ewin, Inc.*, (1972) 152 Ind.App. 171, 282 N.E.2d 841. Since this same expertise is not present in a jury's determination of attorney fees, the original rule should be closely followed. We expect an attorney to strictly comply with the general rule requiring introduction of evidence which fairly tends to prove the reasonableness of the fee.

The evidence submitted at trial consisted of testimony by Alice Palmer, Collection Manager of the bank. Mrs. Palmer testified at trial that plaintiff's counsel had told her his fee would be $5,000. On the basis of this testimony alone the jury returned an award of $5,000 for attorney fees.

This court recently held that similar testimony was insufficient standing alone to support reasonable attorney fees awarded by the trial court. *U.S. Aircraft Financing, Inc. v. Jankovich*, (1980) Ind.App., 407 N.E.2d 287, 295. In that case we noted:

> "There is no foreseeable hardship in establishing the amount of fees by way of the procedure we have outlined. Most lawyers maintain time records or can estimate their time spent on a particular case with some accuracy. The same is true with out-of-pocket expenses. Further, if it is felt the legal work performed justifies a higher than normal fee, there is no reason why testimony regarding the difficulty or complexity of a case should not be introduced. Any imposition upon or embarrassment of a lawyer forced to prove his fees in open court should be minimal, especially when balanced with the fact that such a practice would tend to enhance the integrity of the legal profession in the eyes of the litigants and the public at large."

*Id.* at 296.

Because we find a bank official's testimony as to what the bank's attorney told her he would charge to be insufficient evidence on which to support a reasonable attorney fee award, we reverse on this issue alone. Since we reverse, we will not address appellants' arguments concerning instructions as to attorney fees.

## VI

Lastly, appellants argue that the jury's verdict and the trial court's judgment are contrary to the evidence.

The standard of review applied by this court requires that we affirm the trial court's action if it can be sustained on any legal theory. *English Coal Co., Inc. v. Durcholz*, (1981) Ind.App., 422 N.E.2d 302. In light of our discussion above, we find no error respecting the trial court's judgment except as it relates to the award of attorney fees.

If there is any substantial evidence of probative value to support the findings and conclusions of the trier of fact, the judgment will not be disturbed. *Dowell v. Fleetwood*, (1981) Ind.App., 420 N.E.2d 1356.

We find the evidence was sufficient to support that part of the judgment relating to liability on the note and the amount due and owing thereon. We reverse only as to attorney fees, finding the evidence was insufficient for the jury to determine a reasonable fee.

Therefore, this case is remanded solely to determine reasonable attorney fees. In all other respects the judgment below is affirmed.

MILLER, P. J., concurs.

YOUNG, J., dissents with opinion.

YOUNG, Judge, dissenting.

I concur in Issues I through IV and dissent in the reversal under Issue V. The bank officer's testimony is sufficient to support the jury's award of $5,000.00 in attorney's fees. There was an express agree-

ment to pay reasonable attorney's fees in the note. We cannot weigh the evidence on appeal. It was up to the jury to determine reasonableness. *U.S. Aircraft Financing, Inc. v. Jankovich*, (1980) Ind.App., 407 N.E.2d 287 is not controlling; there, no evidence of reasonable attorneys' fees was presented.