887 P.2d 566

**BANK ONE, ARIZONA, a national banking association, Plaintiff–Appellant, Cross–Appellee,**

v.

**A.E. ROUSE and Betty M. Rouse, husband and wife, Defendants–Appellees, Cross–Appellants,**

**Joseph P. Schwan and Catherine Schwan, husband and wife, Defendants–Appellees.**

No. 1 CA–CV 91–0612.

Court of Appeals of Arizona, Division One, Department D.

May 5, 1994.

Review Denied Jan. 24, 1995.

Bryan Cave by Stephen M. Dichter, Mark I. Harrison and George Vice III, Phoenix, for plaintiff-appellant, cross appellee.

Copple, Chamberlin & Boehm, P.C. by Scott E. Boehm and Richard Q. Nye, Ltd. by Richard Q. Nye, Phoenix, for defendants-appellees, cross appellants.

## OPINION

CLABORNE, Presiding Judge.

This action arose out of a 1985 real estate loan in the original principal amount of $11,-500,000 from Valley National Bank of Arizona ("VNB") [1] to the Varga Group, an Arizona general partnership. The guarantors defaulted on the loan and VNB brought this

---

1. VNB's successor in interest is Bank One, Arizona, but we will continue to refer to it as VNB

action. The case was tried to a jury and the jury returned its verdict in favor of the guarantors. VNB brought this appeal raising four issues for review:

1. Whether Appellees' claims, defenses, and the judgment are void on grounds of illegality;

2. Whether the parol evidence rule should have barred the admission of evidence contradicting the loan agreement;

3. Whether the evidence supported Appellees' claim for negligent misrepresentation; and

4. Whether the trial court abused its discretion in denying the motion for new trial.

Appellees raise one issue on cross-appeal:

Whether the trial court erred in refusing to award reasonable attorney's fees pursuant to statute.

Since we believe that the evidence presented at trial supports the verdicts rendered and that the trial court did not abuse its discretion in denying the motion for new trial and an award of attorney's fees, we affirm in part. However, because we do not want to engage in a policy of enforcing illegal contracts, we reverse the award of damages in favor of Appellees, and we also reverse on the negligent misrepresentation claim.

## FACTS AND PROCEDURAL HISTORY

The Varga Group is an Arizona general partnership consisting of Charles P. Varga, Schwan Properties, A.E. Rouse & Company, and B.M. Rouse & Company. Appellee Joseph P. Schwan is a partner in Schwan Properties, an Arizona partnership, and is married to Catherine Schwan. Appellees A.E. Rouse and B.M. Rouse are husband and wife, and are partners in A.E. Rouse & Company and B.M. Rouse & Company, Wyoming general partnerships. The Varga Group was formed for the purpose of purchasing real estate known as Lone Mountain Ranch. The Varga Group approached VNB to help in its financing of the real estate.

for purposes of this appeal.

In 1985, VNB and the Varga Group entered into a real estate loan agreement in the amount of $11,500,000. The loan was made pursuant to a written loan agreement, evidenced by a written promissory note, and secured by a deed of trust. A.E. and B.M. Rouse, Charles Varga, and Joseph and Catherine Schwan each personally guaranteed the loan as an additional inducement for VNB to make the loan.

In 1987, the Varga Group and the guarantors defaulted on the loan and VNB sued to foreclose the deed of trust and for the remaining deficiency.[2] The Varga Group and the guarantors defended and counterclaimed on the basis of an alleged oral joint venture agreement between VNB and the Varga Group designed to evade federal statutes prohibiting VNB's involvement as a joint venturer. The Varga Group and the guarantors claimed that the oral agreement provided that VNB would continue indefinite funding of interest payments on VNB's loan until the subject property was sold. They also contended that the joint venture agreement required VNB to seek satisfaction of the debt only from the sales proceeds on the property, and that VNB would share in the net profits of the sale of the subject property in the amount of twenty-five percent, which would be labeled an additional interest loan.

The Varga Group filed Chapter 11 bankruptcy in the U.S. Bankruptcy Court for the District of Arizona. VNB filed a motion in Bankruptcy Court to foreclose its deed of trust on the Varga Group's real property. The motion was granted and VNB foreclosed its deed of trust by nonjudicial foreclosure at a Trustee's Sale. The Varga Group's Chapter 11 bankruptcy was dismissed prior to the commencement of trial, and VNB's lawsuit against the Varga Group for the remaining deficiency was returned to the trial court for adjudication.

A deficiency hearing was held pursuant to Ariz.Rev.Stat.Ann. ("A.R.S.") section 33–814 (Supp.1993) in which VNB obtained judgment against the Varga Group in the total amount of $12,946,415.10, plus interest at the rate of ten percent from June 19, 1991, until paid.

The case against the guarantors was tried to a jury and the jury returned four verdicts finding: (1) the relationship between VNB and the guarantors to be a joint venture; (2) in favor of Rouse and Schwan as to their negligent misrepresentation claims, but awarding no damages; (3) for VNB as to Rouse and Schwan's fraud claim; and (4) in favor of Rouse and Schwan on the breach of contract claim against VNB, awarding $300,-000 in damages. Following the verdict, VNB filed a motion for judgment notwithstanding the verdict and Rouse filed an application for attorney's fees and costs. Both were denied. VNB then filed a motion for new trial on the grounds that the jury's verdict and judgment based thereon were not justified by the evidence and were contrary to law. The trial court denied the motion and VNB brought this appeal from the judgment entered and the order denying the motion for new trial.

## DISCUSSION

### 1. Waiver of Illegality

■ The first issue on appeal is whether the judgment is void on the grounds of illegality. Specifically, VNB claims that the defenses and counterclaims raised by Appellees are based on an alleged oral agreement which was ultra vires, illegal, and unenforceable against VNB. Appellees respond by arguing that the illegality and ultra vires defenses were not raised below and therefore are waived on appeal. Appellees cited several cases for the proposition that illegality must be pleaded and proved or it is waived. See Leone v. Precision Plumbing and Heating of S. Arizona, Inc., 121 Ariz. 514, 516, 591 P.2d 1002, 1004 (App.1979); see also Aldrich and Steinberger v. Martin, 172 Ariz. 445, 447, 837 P.2d 1180, 1182 (App.1992) (only those theories raised below are preserved for appeal). In response, VNB cites cases which hold that illegality may be raised for the first time on appeal. Koenen v. Royal Buick Co., 162 Ariz. 376, 381, 783 P.2d 822, 827 (App. 1989); Mitchell v. American Sav. & Loan Ass'n, 122 Ariz. 138, 140, 593 P.2d 692, 694 (App.1979).

---

2. VNB's claim against Charles P. Varga and his wife was subsequently discharged in bankruptcy.

■ The current case law seems to support both sides. However, as we noted in *Leone,* when the illegality "appears on the face of the contract *or from appellees' case,*" the defense is preserved even though it was not pleaded and proved. *Leone* at 516, 591 P.2d at 1004 (emphasis added). Further, we may exercise our discretion to consider unargued issues when there is clearly a wrong to be addressed and when the issue will dispose of the case on appeal. *Aldrich and Steinberger* at 447–48, 837 P.2d at 1182–83. We find not only that the issue of illegality appears in the record, but also that we can address the wrong and dispose of this case without having to return it to the trial court.

■ Additionally, we refuse to allow the courts to be used to enforce a contract that is contrary to law and common sense. As our supreme court stated in *National Union Indem. Co. v. Bruce Bros., Inc.,* 44 Ariz. 454, 38 P.2d 648 (1934):

"... In such cases there can be no waiver. The defense [of illegality] is allowed, not for the sake of the defendant, but of the law itself. The principle is indispensable to the purity of its administration. It will not enforce what it has forbidden and denounced. The maxim, *ex dolo malo non oritur actio,* is limited by no such qualification. The proposition to the contrary strikes us as hardly worthy of serious refutation. Whenever the illegality appears, whether the evidence comes from one side or the other, the disclosure is fatal to the case. No consent of the defendant can neutralize its effect. A stipulation in the most solemn form to waive the objection, would be tainted with the vice of the original contract, and void for the same reasons. Wherever the contamination reaches, it destroys. The principle to be extracted from all the cases is, that the law will not lend its support to a claim founded upon its violation...."

44 Ariz. at 466–67, 38 P.2d at 653, quoting *Coppell v. Hall,* 74 U.S. (7 Wall.) 542, 558, 19 L.Ed. 244 (1868) (citations omitted). We therefore exercise our discretion to address the issues of illegality and ultra vires.

## 2. The Joint Venture

■ We will view the facts in a light most favorable to upholding the judgment and make all reasonable inferences from the evidence in favor of Appellees, *McFarlin v. Hall,* 127 Ariz. 220, 224, 619 P.2d 729, 733 (1980). In viewing the facts most favorable to Appellees we find that a joint venture did exist and that the loan document was only a part of the entire agreement between VNB and the Varga Group.

VNB and Appellees clearly entered into a joint venture in which VNB agreed to limit repayment on its loan to proceeds generated from a real estate development. The agreement was not documented because such a relationship would violate federal banking laws. Charles Varga testified to this fact:

Q. Prior to the time of the closing ... did anyone at [VNB] tell you that they were in this transaction as your partners?
A. When Barry Shannahan [the bank's loan officer] came to my office and he made the comment about the bank wanting twenty-five percent of it, he said to me that they would have to take, or show their interest in the project as additional interest under the loan because of the feds suggesting that they couldn't sign a joint venture document.

Ample evidence indicated that VNB was participating as a joint venturer: an internal document of the bank entitled "Credit Review" said that the source of payment would be "[p]roceeds from sale of parcel;" that there was additional interest at "twenty-five percent of net profit upon sale;" that VNB would "look to the strength of our partners to support this credit;" and that profit participation by VNB was twenty-five percent. Thus, in viewing the facts in a light most favorable to Appellees, we find evidence in the record to support the jury's conclusion that a joint venture did exist.

National banks are regulated by federal statute, "and they cannot rightfully exercise any powers except those expressly granted or which are incidental to carrying on the business for which they are established." 7 A.D. LOWALSKY, ET AL., MICHIE ON BANKS AND BANKING 238 (1989 Replacement); 12 U.S.C.S. § 24 (Seventh) (Supp.

1993). National banks have not been expressly granted the authority to be partners in speculative, real estate joint ventures, nor is such authority incidental to carrying on the business of banking. *See* 12 U.S.C.S. §§ 24 (Seventh) and 29 (Supp.1993)[3]; A.R.S. § 6–184(A)(7) (1989). "The purpose of [the statutes] is 'to keep the capital of the banks flowing in the daily channels of commerce; to deter them [banks] from embarking in hazardous real-estate speculations; and to prevent the accumulation of large masses of such property in their hands, to be held as it were, in mortmain.'" *First Nat'l Bank of Bellaire v. Comptroller of Currency*, 697 F.2d 674, 681 (5th Cir.1983) (citation omitted). We deny national banks

> the opportunity to earn a profit through investing in ventures unrelated to the business of banking not simply because they might unfairly compete in other industries, but because the pursuit of profit in fields unrelated to banking could tempt bankers to make unwise or improvident decisions and thus could threaten the strength and stability Congress sought to instill in the banking industry.

*American Soc'y of Travel Agents, Inc. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 385 F.Supp. 1084, 1089–90 (N.D.Cal.1974); *see also* MICHIE ON BANKS AND BANKING at 246.

Here, VNB attempted to enter into a speculative real-estate venture with the opportunity to earn a profit. This activity is prohibited by federal regulation and is the type of activity which was specifically intended to be prohibited. Further, it is well established in Arizona that agreements to deceive bank examiners are contrary to public policy. *Bank of Douglas v. Robinson*, 78 Ariz. 231, 237, 278

P.2d 417, 421 (1954); *see also Resolution Trust Corp. v. Jet Stream Ltd.*, 790 F.Supp. 1130, 1135 (M.D.Fla.1992) ("Alleged oral agreements that a bank was functioning as a joint venturer or partner, rather than a lender, have been repeatedly rejected by the courts under *[the D'Oench Doctrine]*[4] and [12 U.S.C.] section 1823(e) where that relationship was not reflected in the bank's records." (Citations omitted)). We will not enforce secret agreements. *Bank of Douglas* at 237, 278 P.2d at 421. "To hold otherwise would permit fictitious paper to be held by banks, with no protection to creditors, stockholders, or perhaps depositors, in their reliance upon the bank's assets." *Id.*

Here, the testimony revealed that the parties knew they were attempting to deceive bank regulators by not documenting the alleged joint venture. The joint venture agreement provided that VNB would never look to the partners or guarantors for payment, but only to proceeds on sales of land sometime in the indefinite future. Further, VNB agreed to carry all the interest. This type of agreement is prohibited by federal statute, and the claims and defenses arising from the agreement are illegal, void, and unenforceable. *See Gaertner v. Sommer*, 148 Ariz. 421, 423, 714 P.2d 1316, 1318 (App.1986) (unlawful contracts are void and unenforceable).

### 3. The Inapplicability of the Parol Evidence Rule

■ The second issue raised on appeal is whether the claims and defenses raised by Appellees violate the parol evidence rule— that is, whether the evidence tending to show that the agreement was a joint venture was

3. U.S.C.S. section 29 provides in part:

  A national banking association may purchase, hold, and convey real estate for the following purposes, and for no others:

  First. Such as shall be necessary for its accommodation in the transaction of its business.

  Second. Such as shall be mortgaged to it in good faith by way of security for debts previously contracted.

  Third. Such as shall be conveyed to it in satisfaction of debts previously contracted in the course of its dealings.

  Fourth. Such as it shall purchase at sales under judgments, decrees, or mortgages held

  by the association, or shall purchase to secure debts due to it.

  But no such association shall hold the possession of any real estate under mortgage, or the title and possession of any real estate purchased to secure any debts due to it, for a longer period than five years except as otherwise provided in this section....

4. *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

inadmissible as violative of the parol evidence rule. The parol evidence rule applies *only* where the evidence is being offered to contradict or vary the meaning of an agreement. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 154, 854 P.2d 1134, 1140 (1993). Here, the agreement was the joint venture and the loan documents were part and parcel of that agreement. The loan documents were not severable as a separate agreement, and therefore, the parol evidence rule is inapplicable.

### 4. Negligent Misrepresentation

The third issue raised on appeal is whether the evidence supported Appellees' claim for negligent misrepresentation. To establish their negligent misrepresentation claim, Appellees must demonstrate that they had a right to rely on the alleged misrepresentations by VNB. *St. Joseph's Hosp. and Medical Ctr. v. Reserve Life Ins. Co.*, 154 Ariz. 307, 316, 742 P.2d 808, 817 (1987). Because of our resolution that the joint venture agreement was illegal and unenforceable, Appellees had no right to rely on such representations as a matter of law. *See School Dist. No. 69 of Maricopa County v. Altherr*, 10 Ariz.App. 333, 458 P.2d 537 (1969). Such agreements and representations involved the parties in unlawful activities intended to deceive bank regulators. We therefore reverse the judgment of the trial court finding in favor of Appellees as to their negligent misrepresentation claims.

### 5. Motion for New Trial

The fourth issue on appeal is whether the trial court abused its discretion in denying VNB's motion for new trial. We will uphold the order denying the motion for new trial unless the trial court clearly abused its discretion. *Standage v. Standage*, 147 Ariz. 473, 482, 711 P.2d 612, 621 (App.1985). We find that the trial court did not abuse its discretion in denying the motion for new trial.

VNB argued in its motion for new trial that the jury's verdict and the judgment were not justified by the evidence. As we stated earlier, we conclude that there was ample evidence to support the finding that this was a joint venture. Thus, the jury's verdict and the trial court's judgment were justified by the evidence and the trial court did not abuse its discretion in denying the motion for new trial.

### 6. Attorney's Fees

The final issue raised for our review is whether the trial court abused its discretion in denying an award of attorney's fees and costs to Appellees pursuant to A.R.S. section 12–341.01(A) (1992). We find no evidence in the record to indicate that the trial court abused its discretion in refusing to award attorney's fees. Since the verdict was part in favor of VNB and part in favor of Appellees, there was no clear successful party. In such a situation, it is proper for the court to find that there were no successful parties. *Morris v. Achen Constr. Co., Inc.*, 155 Ariz. 507, 511, 747 P.2d 1206, 1210 (App. 1986), *rev'd in part and vacated in part on other grounds*, 155 Ariz. 512, 747 P.2d 1211 (1987). We affirm the order denying the motion for attorney's fees.

Pursuant to A.R.S. section 12–341.01 and Arizona Rules of Civil Appellate Procedure 21 (1988), we exercise our discretion not to award attorney's fees and costs on appeal.

### CONCLUSION

We hold that the agreement between VNB and Appellees was a joint venture. However, because such a joint venture was illegal and unenforceable, we cannot and will not enforce the award of $300,000 in favor of Appellees for breach of that agreement. We further hold that Appellees could not rely on the misrepresentations of VNB because such representations were contrary to law. Finally, we hold that the trial court properly denied the motion for new trial.

Accordingly, the judgment that this is a joint venture and the order denying the motion for new trial are affirmed. The judgments awarding Appellees $300,000 in damages and finding in favor of Appellees on their negligent misrepresentations claims are reversed.

GERBER and McGREGOR, JJ., concur.